Bruce TRIMPER, individually and as Parent and legal guardian of Kyle Trimper; Karen Trimper, individually and as Parent and legal guardian of Kyle Trimper; and Kyle Trimper, Plaintiffs,

v.

TERMINIX INTERNATIONAL COMPANY, Limited Partnership, Defendant.

No. 99–CV–643(LEK/RWS).

United States District Court, N.D. New York.

Jan. 25, 2000.

Andrew W. Gilchrist, John A. DeFrancisco, Harris, Beach Law Firm, Syracuse, NY, for Plaintiff.

Kevin E. Wolff, McElroy, Deutsch Law Firm, Morristown, NJ, for Terminix International Co.

## MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

This action involves claims of bodily injury and property damage arising from the application of Defendant's pesticide to Plaintiffs' residence. Defendants removed the case from state court upon diversity grounds, and now seek to dismiss, or in the alternative, stay the action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4 ("FAA"). Plaintiffs' in turn have cross-moved to disqualify Defendant's law firm, McElroy, Deutsch & Mulvaney ("McElroy"), on the basis of alleged improper direct communications with Plaintiffs in violation of D.R. 7–104. For the reasons set forth below, Defendant's motion to stay the action is granted, and Plaintiffs' motion to disqualify McElroy is conditionally granted.

## I. BACKGROUND

Plaintiff Bruce Trimper entered into a service contract with Defendant on April 3, 1996, for the application of pesticide to his family home in Rotterdam, New York. Defendant made the application on April 11 and August 1 of that year. Plaintiffs then claimed property damage and bodily injury arising from the pesticide application. On September 8, 1997, Defendant filed a Demand for Arbitration of any claims related to or arising out of its obligations under the Termite Service Plan.

Plaintiffs filed a petition in the Supreme Court of the State of New York, County of Schenectady, seeking to stay the demand for arbitration. Defendant responded with a motion to dismiss. On January 7, 1998, Justice Vito C. Caruso issued a decision dismissing Plaintiffs' petition and ordering the arbitration to go forward. Plaintiffs filed a notice of appeal and a notice of motion for an extension of time in which to perfect the appeal, but the latter motion was denied, and the time in which to appeal Justice Caruso's decision has expired.

On April 2, 1999, Plaintiffs filed a complaint in Supreme Court, County of Schenectady, and Defendant removed the action to this Court on the basis of diversity.

## II. ANALYSIS

### A. Defendant's Motion to Dismiss or Stay

#### 1. Res Judicata

Defendant contends that the arbitration agreement contained in the contract is within the scope of the FAA and the arbitration should go forward and the current action dismissed, or, in the alternative,

stayed pending arbitration pursuant to the FAA, 9 U.S.C. § 3. Defendants argue that the prior state court ruling precludes this action under res judicata.

 Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The doctrine of collateral estoppel has a narrower scope but a broader application. It bars the relitigation of only those issues that actually were decided in the previous case, rather than encompassing issues that could have been litigated but were not. The fact that the prior ruling in this action took place in state court is irrelevant. The Full Faith and Credit Clause of the Constitution requires that federal courts give state court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). New York state law therefore guides this Court's analysis.

In deciding res judicata claims, New York follows the transactional analysis approach. "Under this address, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (N.Y.1981). However, "before full res judicata effect can be given to a prior judgment it must be shown that the prior judgment was a final adjudication on the merits." *McNaughton v. Hudson*, 50 A.D.2d 863, 377 N.Y.S.2d 140 (2d Dep't 1975). In addition, a claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate

that claim. *See Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 72 A.D.2d 385, 391, 424 N.Y.S.2d 918 (2d Dep't 1980). In short, res judicata would not bar Plaintiffs' instant action if the argument on which it is based—the applicability of the arbitration clause to the initial treatment—was incapable of resolution in the prior state proceeding due to jurisdictional or statutory barriers.

 As a threshold issue, this Court must determine whether Justice Caruso's dismissal constitutes a final judgment on the merits. Plaintiffs apparently do not contest that Justice Caruso's dismissal constitutes a final judgement (indeed, the Court has searched in vain for any response from Plaintiffs as to the res judicata argument raised by Defendant), but the Court nevertheless undertook such a review and concludes that the dismissal was a final judgment on the merits of Plaintiffs' previous petition. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1984), is instructive. The actual issue in *Moses Cone* focuses on the question of whether a federal court properly may abstain from deciding a petition for enforcement of a commercial arbitration agreement brought under section 4 of the FAA, deferring instead to a parallel state court action brought by the party resisting arbitration involving, *inter alia*, a claim that the underlying dispute was not arbitrable under the parties' arbitration agreement—the very argument advanced by Plaintiffs' here. In reaching this question, the Supreme Court initially was required to decide whether the stay order issued by the federal district court with regard to the petition to compel arbitration was a "final decisio[n]" for purposes of appellate jurisdiction under 28 U.S.C. § 1291. The Court determined that the question of arbitrability was the only substantive issue presented by the petition to compel arbitration brought in federal district court and held further that because the state court's judgment on that issue

**4**

would be res judicata, the district court's stay order amounted to a dismissal of the suit. Consequently, Justice Caruso's dismissal of Plaintiffs' petition meets the requirements of a final judgment on the merits.

■ That prior dismissal, however, went to four arguments that are not advanced here. Instead, Plaintiff asserts a theory not previously argued before Justice Caruso, specifically, that the Termite Service Plan containing the broad arbitration clause at issue did not apply to the initial application but only subsequent retreatments. Any disputes arising from the initial treatment would therefore fall outside the arbitration clause. Plaintiffs offer no explanation as to their failure to present this argument to Justice Caruso.

Plaintiffs filed a petition in state court seeking to stay Defendant's Demand for Arbitration and to allow litigation to proceed on all issues. All of the arguments Plaintiffs asserted pertained to the scope and application of the Termite Service Plan, and the arbitration clause contained therein. Justice Caruso clearly had subject matter jurisdiction over the petition, and the argument now asserted before this Court. Indeed, it is clear that a petition under the FAA to stay or compel arbitration must first be brought in state court unless some other basis for federal jurisdiction exists, such as the diversity present here. *See Westmoreland Capital Corp. v. Findlay,* 100 F.3d 263, 268 (2d Cir.1996). Today this Court is asked to resolve an issue that could have been raised before Justice Caruso. New York's broad transactional approach to res judicata bars the relitigation of claims or theories arising out of the same factual grouping as an earlier litigated claim. The Court discerns no reason why it should expend further judicial resources on the scope of the arbitration clause: Plaintiffs had their bite at the apple, and cannot be given a second by claiming that the apple is now red instead of green. Substance, not form, governs where res judicata is argued: "(r)epetitive

litigation is not to be allowed simply because the claim bears new garb." *Thistlethwaite v. City of New York,* 362 F.Supp. 88, 93 (S.D.N.Y.1973), *aff'd,* 497 F.2d 339 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974).

## 2. Tort v. Contract Claims

■ The arbitration clause provides for the arbitration of "any controversy or claim . . . arising out of or relating to this agreement." Plaintiffs maintain that the clause does not apply to personal injury claims sounding in tort, but only breach of contract claims. The arbitration clause, however, does not limit itself to contract claims. Nor can Plaintiffs escape the arbitration clause by recasting their arguments in tort rather than contract. A rose by any other name is still a rose.

The Second Circuit addressed the arbitrability of an almost identical claim in *Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd.,* 385 F.2d 158 (2d Cir.1967). There, Altshul Stern, a garment wholesaler, charged its Japanese manufacturer with conspiring with its employee to destroy its business. Although alleging a conspiracy claim rather than an unfair competition claim, Altshul Stern asserted, that the defendant-manufacturer made overcharges, failed to deliver ordered goods, and shipped defective goods. Viewing these allegations, the court observed that the plaintiff's claim was not "wholly independent of the contract", and that it could not "avoid the broad language of the arbitration clause by the casting of its complaint in tort." *Id.* As a result, the Second Circuit held that Altshul Stern's claim was subject to arbitration. In short, the contract and tort claims were virtually identical.

Here, the source of the duty of care that was allegedly breached and gave rise to the tort claim arises from the service contract. The tort claim here does not fall beyond the scope of the contractual relationship. There can have been no breach

without negligence. The two are intimately connected, and removing the tort claims from the arbitration risks inconsistent results while expending judicial resources on a duplicative proceeding. Contrary to Plaintiffs' contention, the Second Circuit has *not* held arbitration is inappropriate for tort claims, as amply demonstrated by a plethora of Second Circuit precedent. The Court admonishes Plaintiff's counsel, Andrew Gilchrist, Esq., of Harris Beach & Wilcox, L.L.P., against indulging in similar overstatements that verge on misrepresentations to the Court in the future.

### 3. Third Party Beneficiaries

 Finally, Plaintiffs contend that the claims of plaintiff Karen Trimper and Kyle Trimper do not fall within the coverage of the arbitration agreement, and as non-signatories the arbitration clause cannot be enforced against them by the promisor. The Court disagrees.

In *PromoFone, Inc., v. PCC Management, Inc.,* 224 A.D.2d 259, 637 N.Y.S.2d 405 (1st Dep't, 1996), petitioner, Promo-Fone, Inc., sought to compel arbitration in New York, and to stay California litigation brought by PCC Management, Inc., a signatory to an arbitration agreement. The stay was granted and PCC was ordered to arbitrate not only with PromoFone, but also with Falconwood, a non-signatory to the arbitration agreement. The lower court's order was affirmed because "the record reveal[ed] that the issues in the overall dispute between the other petitioners and appellant PCC are 'inextricably interwoven' with the claims against non-signatory Falconwood." *See also, Berg v. Dimson,* 151 A.D.2d 362, 542 N.Y.S.2d 609 (1st Dept., 1989), *lv. denied* 75 N.Y.2d 703, 552 N.Y.S.2d 109, 551 N.E.2d 602 (1990).

Similarly, the claims of plaintiffs Karen and Kyle Trimper are derivative of and closely related to those of plaintiff Bruce Trimper. The arbitration proceeding could therefore potentially resolve issues related to the claims of all three plaintiffs.

### B. Cross Motion to Disqualify

For reasons passing understanding, Robert W. Muilenburg, Esq., Defendant's attorney in this action, accompanied representatives of EnSafe, an environmental consultant retained by Defendant, employees of Defendant's Albany branch, and another consultant to a site inspection at Plaintiffs' home on August 6, 1997. Muilenburg contends that he went with the full knowledge of one of Plaintiffs' counsel, Carl G. Dworkin, Esq. of Harris Beach. Dworkin affirms that he advised Muilenburg that he saw no reason for an attorney to be present for the testing, and states that at no time did he give Muilenburg permission to converse with Plaintiffs or their agents. What followed is much disputed. Muilenburg claims that he merely exchanged pleasantries with plaintiff Bruce Trimper, but Mr. Trimper has submitted an affidavit stating that Muilenburg attempted to engage him in substantive conversation.

 Plaintiffs now seek to disqualify the McElroy firm for an alleged violation of D.R. 7–104, which prohibits an attorney during the course of representation from "[c]ommunicat[ing] or caus[ing] another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so." DR 7–104(a)(1), Disciplinary Rules of the Code of Professional Responsibility. Muilenburg's argument that Plaintiffs waived their right to assert an ethical violation based on the passage of time finds no support in the case law or common sense. Time does not heal all wounds, nor make good a breach of the attorney-client relationship.

 This Court is mindful that a violation of the rules of ethics does not alone trigger disqualification. *W.T. Grant Co. v. Haines,* 531 F.2d 671, 677 (2d Cir. 1976). Generally, courts have expressed reluctance to disqualify counsel because of

concerns regarding (1) the "immediate adverse effect disqualification has on the client separated from his lawyer," (2) "the desire to preserve, to the greatest extent possible, ... the individual's right to be represented by counsel of his or her choice," and (3) "the awareness that disqualification motions are being made, with increasing frequency, with purely strategic purposes in mind." *Vegetable Kingdom, Inc. v. Katzen,* 653 F.Supp. 917, 921 (N.D.N.Y.1987). Nevertheless, where a clear conflict of interest is found to exist, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (1975); *see also Cheng v. GAF Corp.,* 631 F.2d 1052, 1059 (2d Cir. 1980), *vacated on other grounds and remanded,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981). Furthermore, where a lawyer's conduct might "taint" the case, disqualification is appropriate. *Papanicolaou v. Chase Manhattan Bank, N.A.,* 720 F.Supp. 1080, 1083–84 (S.D.N.Y.1989).

*Papanicolaou* is instructive. There, the court disqualified defendants's law firm after the attorney in charge of the defense of the case met with the plaintiff for one and one-half hours outside the presence of the plaintiff's counsel. The court noted that the rule banning communications with the opposing party serves two separate interests. First, it prevents opposing counsel from obtaining admissions or privileged information from the other party without his or her counsel being present. Second, it preserves the integrity of the attorney-client relationship by preventing opposing counsel from challenging the tactics or reputation of that party's attorney. *See Papanicolaou,* 720 F.Supp. at 1084.

■ According to Trimper's affidavit, the conversation apparently focused on why certain application holes previously drilled by Defendant had been reopened and why two refilled holes had not been repainted. These queries fall short of the cross-examination that took place in *Papanicolaou,* but arguably were an attempt by Muilenburg to obtain admissions or privileged information from his adversary's client. Muilenburg's reliance on the fact that the communication took place prior to filing of the current action is unavailing since D.R. 7–104 contains no such limiting language. As to his claim that Plaintiffs suffered no harm or prejudice as a result of the communication, the Court expresses its disbelief that Muilenburg believes that an attorney can indulge in an impermissible attempt to secure information but evade sanctions on the basis that he was unsuccessful.

More constructive is Muilenburg's contention that several other individuals were present who could corroborate his account are unavailing since he failed to submit any affidavits by those individuals in opposition to Plaintiffs' cross-motion. To resolve this issue, the Court directs Muilenburg to assemble those affidavits forthwith. In the interim, the Court will disqualify the McElroy firm but stay its order until such time as it may review those submissions.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendant's motion to stay this action is GRANTED and the action STAYED pending arbitration;

ORDERED that Plaintiffs' motion to disqualify the law firm of McElroy, Deutsch & Mulvaney is GRANTED but the disqualification STAYED pending submission of the affidavits referenced above, and those affidavits are to be submitted no later than February 21, 2000; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.