**In re SWIFT TRANSPORTATION COMPANY, INC., Relator.**

No. 05–08–01377–CV.

Court of Appeals of Texas, Dallas.

Jan. 23, 2009.

**404**

Michael P. Sharp, Clinton Cox, Fee, Smith, Sharp and Vitullo, L.L.P., Wes Black, Dallas, for relator.

Charles Clayton Miller, The Law Offices of Miller and Curtis, L.L.P., William A. Newman, Amanda L. Schwartz, Dallas, for real party in interest.

Before Chief Justice THOMAS and Justices FITZGERALD and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Relator Swift Transportation Company, Inc. seeks mandamus relief after the trial court denied its motion to compel arbitration. Because the Federal Arbitration Act (FAA)[1] requires the trial court to compel arbitration in this case, we conditionally grant the petition and order the trial court to compel arbitration in accordance with the parties' agreement.

### BACKGROUND

Swift is an interstate transportation company. On August 14, 2007, Swift and real party in interest Carlus McDougle entered into a Contractor Agreement, in which McDougle agreed to transport freight for Swift as an independent contractor. On the same day, McDougle also signed a Mentor Addendum, under which McDougle agreed to serve as one of Swift's mentor-drivers, training Swift's employee drivers. Several months later, while McDougle was riding as a passenger and serving as a mentor to a Swift employee, Michael Glen Curtis, Curtis lost control of the tractor-trailer he was driving, crossed a center highway median, and hit an oncoming tractor-trailer. Curtis was killed and McDougle was injured.

McDougle filed suit against Swift and Curtis's estate, asserting claims against

---

1. 9 U.S.C.A. §§ 1–16.

Curtis's estate for Curtis's alleged negligence, and asserting claims against Swift for Swift's alleged negligence and for vicarious liability for Curtis's alleged negligence. Swift and the temporary administrator of Curtis's estate moved to abate the suit and compel arbitration under the terms of the Contractor Agreement. In response, McDougle argued that his claims against Swift were not subject to the arbitration clause in the Contractor Agreement because his claims were strictly "ordinary negligence claims related to another's operation of a motor vehicle" and he "does not allege any claim arising under or relating to either his contract with Swift or the relationship created by it." After a hearing, the trial court issued an order denying the motion to abate and to compel arbitration. The trial court also issued written findings of fact and conclusions of law, in which it concluded that (1) the Mentor Addendum signed by McDougle on the same day that he and Swift entered into their Contractor Agreement "did not amend (or become part of) the Contractor Agreement" because it was only signed by McDougle, and (2) McDougle's tort claims are unrelated to the Contractor Agreement.

## ISSUE ON APPEAL

Swift argues that the trial court's decision to deny arbitration was an abuse of discretion because it was based on "erroneous conclusions of law." Consequently, in order to determine whether the trial court improperly denied the motion to abate and compel arbitration, we must determine (1) the scope of the parties' agreement (i.e., whether the Mentor Addendum was part of the Contractor Agreement), and (2) whether McDougle's claims are

subject to the following arbitration provision in the Contractor Agreement:

> *Arbitration.* All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by this Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes, or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.... [2]

## APPLICABLE LAW

█ The FAA generally governs the enforceability of written arbitration provisions in contracts involving interstate commerce. *See In re L & L Kempwood Associates, L.P.,* 9 S.W.3d 125, 127–28 (Tex. 1999) (per curiam). In this case, it is undisputed that the parties' agreement involves interstate commerce, and neither party contends that the FAA does not apply. Although the Contractor Agreement contains a general Arizona choice-of-law clause, it also states that disputes "shall be resolved in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act," which allows us to apply the FAA. *See id.* ("The choice-of-law provision did not specifically exclude the application of federal law, and absent such an exclusion we decline to read the choice-of-law clause as having such an effect."). For these reasons, we apply the FAA to determine whether McDougle's claims are within the scope of the parties' arbitration agreement.

**2.** Both Swift and McDougle agree that this Court, not an arbitrator, should resolve the issue of whether McDougle's claims are subject to arbitration.

## STANDARD OF REVIEW

 "Mandamus relief is available when a trial court erroneously denies a motion to compel arbitration under the FAA." *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex.2006) (per curiam). A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005). In this case, McDougle does not challenge the validity of the arbitration agreement; he contends that his negligence claims are not subject to arbitration. To determine whether an arbitration agreement covers the nonmovants' claims, we focus on the factual allegations underlying those claims, rather than the legal causes of action asserted. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex.2001). And because of the strong federal presumption favoring arbitration, we are required to resolve any doubts in favor of arbitration. *Id.* at 753.

## ANALYSIS

### The Scope of the Parties' Agreement

 We first review the trial court's conclusion that the Mentor Addendum was not part of the Contractor Agreement because it appears that the trial court's decision to deny the motion to compel arbitration was based, at least in part, on that conclusion.

Although McDougle concedes that, at the time of the accident, he was riding as Curtis's passenger pursuant to the Mentor Addendum, McDougle urged the trial court to disregard the Mentor Addendum for three reasons: (1) it is a "separate agreement," which is not referenced in or contemplated by the Contractor Agreement, the agreement containing the arbi-

tration clause, and has "nothing to do with the claims here," (2) it does not claim to modify or amend the Contractor Agreement, and (3) it was only signed by McDougle, and the Contractor Agreement requires any written modifications or amendments to be in a written instrument "signed by the parties." In response, Swift argued that the trial court could consider the Mentor Addendum because it was signed by McDougle.

The Contractor Agreement is a freight-transportation agreement, but it also expressly states that "[c]ertain owner operators are eligible to participate in [Swift's] Driver Mentor Program," and explains that "[a] separate Mentor agreement must be executed by [McDougle] in order for a [Swift] driver trainee to be assigned to [McDougle's] truck for training." It is undisputed that McDougle signed the Mentor Addendum on the same day he signed the Contractor Agreement. The Contractor Agreement also states that any document referenced in it becomes part of the Contractor Agreement:

> *Entire Agreement.* This Agreement, and any other document specifically referred to or contemplated by this Agreement constitutes the entire Agreement and understanding between the parties. This Agreement shall not be modified or amended in any respect except by a written instrument, signed by the parties thereto.

Because the Mentor Addendum was signed by McDougle, as required by the Contractor Agreement, and because it is expressly referenced in the Contractor Agreement, we conclude that it is part of, and must be construed with, the Contractor Agreement. *See, e.g., Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 897–901 (Tex.App.-Austin 2006, no pet.) (two agreements—partnership agreement and

purchase and sale agreement—executed on same day were construed together to determine if claims were subject to arbitration provision contained in partnership agreement).

### Are McDougle's Claims Subject to the Arbitration Clause?

■ Swift contends that McDougle's claims are subject to the arbitration clause because they "arise directly out of the relationship created by the Contractor Agreement." More specifically, Swift argues that McDougle was a passenger in the vehicle Curtis was driving "solely due to [McDougle's] relationship with Swift, and the vehicle was being operated by a Swift employee under the Mentor Addendum to the Contractor Agreement."

To support its argument, Swift principally relies on *In re Weekley Homes, L.P.* 180 S.W.3d 127 (Tex.2005). In that case, the Texas Supreme Court held that a third party to an arbitration agreement was required to arbitrate her personal injury claims against a home builder. *In re Weekley Homes*, however, is not particularly instructive here because, among other distinguishing facts, the arbitration clause in that case expressly covered claims "sounding in ... tort." *Id.* at 129. In this case, the issue is whether personal injury claims are included within an arbitration provision that *does not* expressly list "tort claims" or "personal injury" claims within its scope.

McDougle agrees that the arbitration provision is "broad," and he concedes that "but for the contract" he would "likely ... not have been in that truck at that time with [Curtis]." Nevertheless, he contends that his claims fall outside the scope of the arbitration clause because they are tort claims that do not "require any reference to the contractor agreement or the contractor relationship." To support his argument, McDougle relies on *Dusold v. Porta–John Corp.*, 167 Ariz. 358, 807 P.2d 526 (App.1990). In that case, Robert Dusold serviced and cleaned Porta–John's portable toilets under a licensing agreement containing an arbitration clause. He sued Porta–John for negligence and products liability, "alleging that he suffered personal injuries from chemicals supplied by Porta–John." *Id.* at 527. In response, Porta–John argued that Dusold's claims were subject to arbitration because the parties' contract "contained a provision requiring arbitration in Michigan of 'any controversy or claim arising out of, or relating to this agreement, or the breach thereof.'" *Id.* The court, however, concluded that Dusold's personal injury claims were not subject to arbitration because "the duties involved here would be owed to [Dusold] by Porta–John even if he were a contractual stranger." *Id.* at 531. The court further explained that "[t]he relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties." *Id.*

■ At the outset, we note that the holding in *Dusold* is not binding precedent on this Court.[3] Nevertheless, we do not need to determine whether we agree with the holding in *Dusold*, or whether the reasoning in that case would apply to an arbitration clause governed by the FAA, because the arbitration clause in this case is different from the arbitration clause in *Dusold*. In this case, the parties expressly agreed to arbitrate not only disputes "aris-

---

**3.** On issues of federal law, such as the proper interpretation of the FAA, we must follow the decisions of the United States Supreme Court and the Texas Supreme Court; the decisions of other courts, by contrast, may be persuasive but are not binding on us. *See Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 803 (Tex. App.-Dallas 2008, pet. denied).

ing out of or relating to" their agreement, as in *Dusold,* but also all disputes *"arising out of or relating to the relationship created by the Agreement"* (emphasis added). And under general principles of contract construction, we must "striv[e] to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998). Accordingly, we assume that "arising out of or relating to the relationship created by the Agreement" means something different from "arising out of or relating to this Agreement," and strive to give meaning to that phrase.

It does not appear that any court has addressed whether an agreement to arbitrate claims "arising out of or relating to the relationship created by" an agreement would require the parties to arbitrate personal injury claims like McDougle's. But at least one court has agreed that an arbitration clause with very similar language required a party to arbitrate its tort claim. In *Flanagan v. Matco Tools Corp.,* Civ. A. No. 96–1181, 1996 WL 131125 (E.D.Pa. March 21, 1996), the court interpreted an arbitration clause governed by the FAA, in which the parties agreed to arbitrate "[a]ny claim or controversy in connection with, arising out of, or relating to the relationship between [the parties], this Agreement or any breach thereof." *Id.* at *1 n. 1. In that case, although the scope of the arbitration clause was not disputed, the court agreed that the plaintiff's three claims—including his tort claim for intentional infliction of emotional distress— were "all covered by the arbitration

clause" in the parties' agreement. *Id.* at *2.

We agree with Swift that the phrase "arising out of or relating to the relationship created by the Agreement" is a broad arbitration provision that includes within its scope McDougle's tort claims in this case.[4] McDougle's claims directly arise out of and relate to the relationship created by the Contractor Agreement and Mentor Addendum because McDougle would not have been injured while riding as Curtis's passenger but for his agreement to serve as one of Swift's mentor drivers. As a result, we conclude that the trial court abused its discretion when it denied the motion to abate and to compel arbitration.

### CONCLUSION

We conditionally grant the petition for writ of mandamus. We order the trial court to vacate its August 28, 2008 order and issue an order granting the motion to abate and to compel arbitration. The writ will issue only if the trial court fails to act in accordance with this opinion.

---

4. Although the parties did not expressly list "tort claims" in their arbitration clause, the parties did not exclude tort claims either. *See generally AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (noting presumption in favor of arbitrating broad scope of claims, especially where no type of claim has been specifically excluded); *see also Trimper v. Terminix Int'l Co. L.P.,* 82 F.Supp.2d 1, 4 (N.D.N.Y.2000) (requiring plaintiffs to arbitrate personal-injury claims and noting parties' arbitration clause "does not limit itself to contract claims").