2025 Tex. Bus. 16



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| ATLAS IDF, LP, *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | |
| NEXPOINT REAL ESTATE | § | Cause No. 25-BC01B-0004 |
| PARTNERS, LLC F/K/A HCRE | § | |
| PARTNERS, LLC AND NANCY | § | |
| DONDERO, as Trustee of the | § | |
| Dugaboy Investment Trust, | § | |
| *Defendants* | | |

## OPINION

## Syllabus[*]

*This opinion addresses Texas Government Code Chapter 25A's use of "qualified transaction," including* (i) *when an action "aris[es] out of" a qualified transaction; (ii) the relevant period for determining the aggregate value of a qualified transaction; and (iii) the burden for establishing the same. The opinion also addresses what forms of "interest" are excluded in determining the amount in controversy under this chapter.*

---

[*] This syllabus is provided for the reader's convenience; it is not part of the court's opinion; and it is not legal authority.

[¶ 1] Because this court has "a duty to examine [its] own jurisdiction," it requested briefing regarding its jurisdiction over this case considering Government Code § 25A.001(14)'s definition of "qualified transaction." *See Guillen v. U.S. Bank, N.A.*, 494 S.W.3d 861, 865 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Having considered the parties' pleadings, submissions, arguments, responses, and evidence, the court concludes that it has jurisdiction because this action arises out of a qualified transaction and the amount in controversy exceeds $10 million.

[¶ 2] Here, the assignment of the two promissory notes at issue is a qualified transaction because a party to the transaction (plaintiff) received aggregate consideration of at least $10 million. And the "amount in controversy" includes a promissory note's contracted-for interest.

## I. BACKGROUND

[¶ 3] The court takes these facts from Plaintiff's Original Petition (Pet.) and supporting exhibits unless otherwise indicated:

### A. The Parties

[¶ 4] Plaintiff Atlas IDF, LP is a Delaware limited partnership.[1]

---

[1] Pet. ¶ 3.

[¶ 5] Defendants are NexPoint Real Estate Partners, LLC f/k/a/ HCRE Partners, LLC, a Delaware limited liability company, and Nancy Dondero, as Trustee for The Dugaboy Investment Trust.[2] For convenience, the court refers to NexPoint as HCRE.

[¶ 6] Highland Capital Management, LP is not a party to this action, but its interactions with Atlas and HCRE give rise to this lawsuit.

## B.    The Underlying Transactions

[¶ 7] Atlas sued to collect on two demand promissory notes HCRE executed (the HCRE Notes) and Dondero's related guaranty. Highland is the named payee in both notes.

[¶ 8] HCRE executed the first HCRE Note on May 7, 2014. That note was for $2.3 million in principal, together with interest at 9% per annum compounded annually.[3]

[¶ 9] HCRE executed the second HCRE Note on May 27, 2014. That note was for $5 million in principal, together with 9% interest per annum, compounded annually.[4]

---

[2] Pet. ¶ 4–5.
[3] Pet. ¶ 10; Pet. Ex. 1.
[4] Pet. ¶ 11; Pet. Ex. 2.

[¶ 10] On October 12, 2016, Highland—among other things—assigned the HCRE Notes to Atlas pursuant to a Purchase and Sale Agreement (PSA).[5]

[¶ 11] The PSA memorializes two earlier transactions. First, in 2014, Highland received from third parties two additional notes with aggregate principal amounts of $10 million (the Third-Party Notes).[6]

[¶ 12] Second, on September 26, 2016, Highland transferred the Third-Party Notes to Atlas. In exchange, Atlas paid over $1 million to Highland and delivered to it two "seller notes," with an aggregate principal amount of about $9.7 million when they were executed (the Third-Party Seller Notes).[7]

[¶ 13] In total, the PSA produced these transfers:

- Atlas received the HCRE Notes from Highland,[8] and Atlas's debt under the Third-Party Seller Notes was terminated.[9]

- Highland received the Third Party Notes back from Atlas,[10] and received a new seller note (HCRE Seller Note) from Atlas.[11]

---

[5] Pet. ¶ 12; Pet. Ex. 3 (PSA).
[6] PSA, Ex. A & Ex. B.
[7] PSA at 1–2; PSA Ex. E & Ex. F.
[8] PSA § 2(b)
[9] PSA § 2(a).
[10] PSA § 2(a).
[11] PSA § 2(b).

[¶ 14] As of January 31, 2025, HCRE owed $7.3 million in principal and around $6.4 million in interest, for a combined total of $13.7 million, on the HCRE Notes.[12] Atlas sues to recover those amounts from defendants.

## C. Parties' Arguments

[¶ 15] The court asked the parties to address the court's jurisdiction considering Government Code § 25A.001(14)'s "qualified transaction" definition.

[¶ 16] The court later asked for the HCRE Notes' balances on October 12, 2016, the PSA's effective date. The parties generally agreed that the notes had an aggregate combined principal and interest of about $8.9 million on that date.[13]

[¶ 17] The court also asked whether the PSA could be considered a "qualified transaction."

[¶ 18] Atlas argued that jurisdiction exists because a § 25A.001(14) "qualified transaction" includes where a party to the transaction "is entitled to receive [] consideration with an aggregate value of at least $10 million" and

---

[12] Pet. ¶s 17–18.

[13] Defendants' counsel noted that PSA § 4(h) represented that the HCRE Notes' value to be around $7.5 million but could not explain the difference.

is not limited to the HCRE Notes' principal amounts.[14] It further argued that the PSA was a transaction entitling Atlas to receive in excess of $10 million from HCRE, as evidenced by the nearly $14 million demand in this case.[15] Finally, Atlas urged that "qualified transaction" refers to the transaction's aggregate value when made, including principal and anticipated interest.[16] Because the HCRE Notes are demand notes, Atlas urged us to credit its good-faith pleading allegations of their anticipated value.[17]

[¶ 19] Atlas later reiterated its premise that "consideration" includes anticipated interest as part of the demand notes' bargain and that the court should accept the allegations in its pleadings based on precedents from the Texas Supreme Court and this court.[18] Atlas attached as evidence its calculations and emails with the court demonstrating the parties' general

---

[14] Atlas's 4/9/2025 Brief on the Court's Jurisdiction (Atlas's Br.) at 3.

[15] Atlas's Br. at 7.

[16] Atlas's Br. at 9–10.

[17] Atlas's Br. 11.

[18] Atlas's 4/21/2025 Response on the Court's Jurisdiction (Atlas's Resp.) at 4–9 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) and *C Ten 31 LLC ex. rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 51, 708 S.W.3d 223, 243 (3rd Div.)).

agreement that the HCRE Notes had a combined outstanding balance of around $8.9 million at the time the PSA was executed.[19]

[¶ 20] HCRE agreed that a "qualified transaction" is determined based on the bargain when made, which was less than $10 million on the HCRE Notes because they had yet to accrue any interest.[20] HCRE also urged that the amount in controversy requirement failed because this was not an action exceeding $10 million "excluding interest."[21]

[¶ 21] HCRE further argued that the PSA is not a "qualified transaction" because it is not the "lending transaction at issue."[22] HCRE also reiterated its argument that the statute's unambiguous language prohibits including interest due under the notes when determining the amount in controversy.[23]

## II. DISCUSSION

### A. Applicable Standards

[¶ 22] Atlas pled subject matter jurisdiction based on a Government Code § 25A.004(d) "qualified transaction." So, for jurisdiction to exist, (i)

---

[19] Atlas's Resp. at 1, Ex. 1 & Ex. 2.
[20] HCRE's 4/14/2025 Brief on Jurisdiction (HCRE's Br.) at 2–3.
[21] HCRE's Br. at 3–4.
[22] HCRE's 4/21/2025 Response on the Court's Jurisdiction (HCRE's Resp.) at 1–5.
[23] HCRE's Resp. at 1, 6–8.

the action must arise out of a qualified transaction (*id.* at § 25A.004(d)(1)) and (ii) the amount in controversy must exceed $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs (*id.* at § 25A.004(d)).

[¶ 23] The court asked the parties to address the subject matter jurisdiction question. We analyze their submissions using plea to the jurisdiction standards.

[¶ 24] A plea to the jurisdiction is a procedural vehicle to challenge a trial court's subject matter jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–6 (Tex. 2004) (sovereign immunity challenge). Whether a court has subject matter jurisdiction is a question of law. *Id.* at 226.

[¶ 25] When a plea challenges pleadings, courts determine whether the pled facts demonstrate the court's jurisdiction to hear the cause. *Id.* In that context, courts construe the pleadings liberally in the pleader's favor and look to the pleader's intent. *Id.*

[¶ 26] If a plea challenges the existence of jurisdictional facts, the court must consider relevant evidence. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, the court cannot grant the plea and

the fact finder will resolve the fact issue. *Id.* at 227–28. However, if the evidence fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. This standard generally mirrors the Texas summary judgment standards. *Id.*

## B. "Qualified Transaction"

### 1. Atlas alleged an action arising out of a qualified transaction.

[¶ 27] A qualified transaction means:

> a transaction . . . under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million; or (B) lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million.

TEX. GOV'T CODE § 25A.001(14).

[¶ 28] Atlas pled that jurisdiction exists because its claims arise out of a qualified transaction.[24] The court concludes that the PSA is a qualified transaction because Atlas would not have its claims in the suit but for the PSA.

[¶ 29] Specifically, courts interpret "arising out of" as denoting a broad causal relationship—akin to "but for" causation instead of the narrower and limiting linkage required of "proximate" causation. *See Pinto Tech. Ventures,*

---

[24] Pet. ¶ 7.

*L.P. v. Sheldon*, 526 S.W.3d 428, 437–40 (Tex. 2017) (forum-selection clause: "arising out of" has "broad significance" and "but for" causation suffices, even without direct or proximate causation); *In re Swift Transp. Co., Inc.*, 279 S.W.3d 403, 408 (Tex. App.—Dallas 2009, orig. proceeding) (arbitration clause: "arising out of or relating to" satisfied when injury would not have occurred "but for" agreement); *Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (insurance policy: "arising out of" means simply a "casual connection or relation").

[¶ 30] Here, Atlas's only alleged basis to sue HCRE on the HCRE Notes is that Highland assigned them to Atlas.[25]  But for that assignment, Atlas could not bring this suit.  Accordingly, we conclude that the PSA is a "qualified transaction" if it meets the $10 million aggregate value requirement.  TEX. GOV'T CODE § 25A.001(14)(A), (B).

### 2.    The PSA has an aggregate value of at least $10 million.

#### a.    Aggregate value is measured at the time of transaction.

[¶ 31] The parties agree that a potential qualified transaction's aggregate value is measured at the time of transaction.[26]  Both sides rely on *Goosehead*

---

[25] Pet. ¶ 12.
[26] Atlas's Br. at 9; HCRE's Br. at 2.

*Ins. Agency, LLC v. Williams Ins. and Consulting, Inc.*, 533 F.Supp.3d 367, 376 (N.D. Tex. 2020), which construed "qualified transaction" in TEX. BUS. & COM. § 271.001. But for a different threshold dollar amount, the "qualified transaction" definition under that code is essentially identical to § 25A.001(14).

[¶ 32] Focusing on the statute's meaning of "consideration," the *Goosehead* court held that "the plain meaning of 'consideration' . . . plac[es] focus on the time of transaction." *Id.* at 380. And "[c]onsideration focuses on the bargain—not the outcome or actual performance." *Id.* Thus, the court concluded that the "relevant time to value the transaction is at the time it was entered, rather than the time of dispute." *Id.* at 376.

[¶ 33] We agree regarding § 25A.001(14)(A)'s use of "consideration." And § 25A.001(14)(B)'s terms "lends, advances, borrows, receives," or "is obligated to lend or advance, or is entitled to borrow or receive" also focus on when the transaction was made. Because § 25A.004(d)(1) must "aris[e] out of" a qualified transaction, that transaction must exist prior to the action. So, § 25A.001(14)'s "qualified transaction" definition looks at when the transaction happened, and § 25A.004(d)'s amount in controversy requirement looks to when the suit is filed.

### b. Plaintiff's uncontroverted pleadings are determinative.

[¶ 34] The HCRE Notes are demand notes. [27] The time of payment on a demand note is not definite when it is made and thus neither is the total amount of interest that will be due on the note. TEX. BUS. & COM. CODE § 3.108. But the payee's expected interest on one is part of its consideration for the note. *See Goosehead*, 533 F. Supp. 3d at 380 ("[T]he value agreed to by the parties in advance constitutes the consideration.") (emphasis removed). Good faith, uncontroverted allegations of that value are determinative in the jurisdictional analysis. *See Miranda*, 133 S.W.3d at 226–27.

### c. Application to the PSA

[¶ 35] We conclude that, as a party to the PSA, Atlas received consideration with an aggregate value of at least $10 million for two reasons.

[¶ 36] First, before considering the Third-Party Notes' termination value, the consideration Atlas received on October 12, 2016, by receiving the HCRE Notes reasonably could have been valued above their combined aggregate principal and accrued interest as of that date of $8.9 [28] or $7.5 [29]

---

[27] Including the HCRE Notes, the Third-Party Notes, and the various seller notes.

[28] Atlas's Reply at 1, Ex. 1, and Ex. 2.

[29] PSA at § 4(h).

million. That is, the parties could have reasonably "placed value on [the] transaction" higher than the then-current value of the notes because of the expectation that the amount of interest would grow before there was a payment demand. *See Goosehead*, 533 F.Supp.3d at 380.

[¶ 37] We credit Atlas's allegations to that effect because it pled that this action arises out of a qualified transaction with an aggregate value of at least $10 million, and HCRE has not provided any contrary evidence.[30] The only evidence Atlas or defendants provided on this issue is two letters from early-2025 suggesting that the present value of the HCRE Notes was between $0 and $500,000 because of the legal costs and time required to collect on them.[31] However, those letters are not evidence challenging the value placed on the notes by the parties to the PSA in October 2016, nine years earlier.

[¶ 38] Regardless, Atlas's PSA consideration also included the Third-Party Seller Notes' value of around $9.7 million,[32] because Highland's termination of those notes eliminated Atlas's related debts. Thus, Atlas's consideration (what it received) totaled around at least $18.6 or $17.2 million

---

[30] Pet. ¶ 7.
[31] HCRE's Br. Exs. 1 & 2.
[32] PSA at 1–2.

based on the HCRE Notes' present value on October 12, 2016 (without interest), plus the value of the terminated Third-Party Seller Notes ($9.7M + $8.9M or $7.5M).

[¶ 39] Thus, the aggregate value of consideration Atlas received is at least $10 million and the PSA is a "qualified transaction."

## C.    Amount in Controversy

[¶ 40] HCRE does not challenge that when the suit was filed the HCRE Notes' aggregate principal and interest exceeded $10 million.[33]  Thus, the amount in controversy requirement is met if interest is included.[34]

[¶ 41] However, HCRE argues that only the combined principal amounts of $7.3 million may be considered because the statute grants jurisdiction only if "the amount in controversy exceeds $10 million, *excluding interest*, statutory damages, exemplary damages, penalties, attorney's fees, and court costs."  TEX. GOV'T CODE § 25A.004(d) (emphasis added).  That is, HCRE urges that accrued interest due on the notes' terms does not count.  We disagree for two reasons.

---

[33] Pet. § 18.

[34] S*ee* HCRE's Br. at 3 ("[T]his Court lacks jurisdiction because the amount in controversy does not exceed $10 million *when interest is excluded*.") (emphasis original).

[¶ 42] First, we conclude that "jurisdiction is determined by the amount recoverable under the pleadings at the commencement of the suit." *See Ritchie v. Am. Sur. Co. of N. Y.*, 145 Tex. 422, 432 (1946); *Nix v. Nix*, 797 S.W.2d 64, 65 (Tex. App.—Corpus Christi 1990, no writ) ("The amount in controversy at the time of filing a pleading is the determining sum for jurisdictional purposes."); *supra* ¶ 33.

[¶ 43] Second, we conclude that interest accrued on the terms of a promissory note before filing suit is not the type of "interest" § 25A.004(d) excludes. Rather, the entire principal and interest due on the HCRE Notes represents the amount in controversy because "[i]t has long been the law that the phrase 'amount in controversy,' in the jurisdictional context, means 'the sum of money *or the value of the thing* originally sued for.'" *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) (emphasis original) (quoting *Gulf, C. & S.F.Ry. Co. v. Cunnigan*, 95 Tex. 439, 67 S.W. 888, 890 (1902)); *see also Amount in Controversy*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The damages claimed or relief demanded by the injured party in a lawsuit.").

[¶ 44] Here, Atlas sues for approximately $13.7 million based on the HCRE Notes' full balance.[35] As the Texas Court of Appeals stated in 1887, "[t]his suit being upon a promissory note, it is manifest the plaintiff could recover no more than legal interest as damages, and in fact his suit is brought to recover no more than the principal and interest of the debt" and therefore the "real amount in controversy was the debt and interest thereon." *B. Oppenheimer & Co. v. Fritter*, 3 Willson 320 (Tex. Ct. App. 1887).

[¶ 45] But some cases exclude promissory note interest from amount in controversy requirements for the county and justice of the peace court requirements. *See, e.g.*, *Eanes v. Haynes*, 135 S.W.2d 190, 191 (Tex. Civ. App.—Eastland 1939, no writ) ("It has been determined, in considering the foregoing constitutional provision fixing the jurisdiction of the County Court, in a suit upon a promissory note, that interest cannot be taken into consideration in determining the amount in controversy.").

[¶ 46] This court declines to follow those cases because they concern different statutes with different wording from our jurisdictional statute. Instead, reading the present statutory language in context with applicable

---

[35] Pet. ¶ 18.

rules of construction, we conclude that the type of "interest" excluded by Government Code § 25A.004(d) refers to only accessory items, such as statutory interest, that do not form the principal or essential part of plaintiff's damages claims.

[¶ 47] Specifically, statutory construction is to implement the legislature's intent by giving effect to every word, clause, and sentence. *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689–90 (Tex. 2020). Indeed, statutory text is the "first and foremost" indication of legislative intent. *Greater Hous. P'Ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). Thus, courts apply the words' common, ordinary meanings unless (i) the text supplies a different meaning or (ii) the common meaning produces absurd results. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

[¶ 48] HCRE's premise that the plain meaning of "interest" means all forms of interest without distinction ignores the surrounding statutory context.[36] That is, § 25A.004(d) excludes "interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs" from the amount in controversy calculation. But the *noscitur a sociis* canon—"it is

---

[36] HCRE's Br. at 4.

known by its associates"—provides that a word's meaning in a list should be known by the other words included in the list. *Paxton*, 468 S.W.3d at 61. Given that principle, all the items § 25A.004(d) excludes are additional, accessory sums that may be included in a plaintiff's ultimate recovery but are not the primary basis of its suit.

[¶ 49] Accordingly, we conclude that the type of "interest" Government Code § 25A.004(d) excludes means only accessory forms of interest, such as statutory interest, and not interest that forms the primary basis of a party's claim. *See Tucker v. Pac-Van, Inc.*, No. 13-19-00536-CV, 2021 WL 1687040, at *2 (Tex. App.—Corpus Christi Apr. 29, 2021) (mem. op.) (the exclusion of "interest" under TEX. GOV'T CODE § 27.031(a)(1) (JP court) refers to "statutory interest").

[¶ 50] As of January 31, 2025, the HCRE Notes are alleged to carry approximately $13.7 million in combined principal and interest and therefore the amount in controversy was over $10 million at the time Atlas filed its Original Petition on February 13, 2025.[37]

---

[37] Pet. ¶ 18.

[¶ 51] Accordingly, this suit meets our jurisdictional amount in controversy requirement under Government Code § 25A.004(d).

### III. CONCLUSION

[¶ 52] For these reasons, the court signed its April 22, 2025, order concluding at this stage that the amount in controversy exceeds $10 million and this action arises out of a qualified transaction.

_____
BILL WHITEHILL
Judge, Texas Business Court
First Division

SIGNED: May 13, 2025

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 100766447
Filing Code Description: No Fee Documents
Filing Description: Opinion
Status as of 5/13/2025 12:12 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Deborah Deitsch-Perez | | deborah.deitschperez@stinson.com | 5/13/2025 12:07:50 PM | SENT |
| Jeff Prudhomme | | jeff.prudhomme@stinson.com | 5/13/2025 12:07:50 PM | SENT |
| Patricia Tomasky | | patricia.tomasky@stinson.com | 5/13/2025 12:07:50 PM | SENT |
| Abigail Blaker | | ablaker@ccsb.com | 5/13/2025 12:07:50 PM | SENT |
| Brian P.Shaw | | bshaw@ccsb.com | 5/13/2025 12:07:50 PM | SENT |
| Sherry Stewart | | sstewart@ccsb.com | 5/13/2025 12:07:50 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 5/13/2025 12:07:50 PM | SENT |
| Tammi Alvarado | | talvarado@ccsb.com | 5/13/2025 12:07:50 PM | SENT |
| Angie Barrera | | abarrera@ccsb.com | 5/13/2025 12:07:50 PM | SENT |
| Andrea Reed | | areed@ccsb.com | 5/13/2025 12:07:50 PM | SENT |
| Rhonda LThomas | | rthomas@ccsb.com | 5/13/2025 12:07:50 PM | SENT |