2025 Tex. Bus. Ct. 18



The Business Court of Texas
Eighth Division

| | | |
|---|---|---|
| G-FORCE & ASSOCIATES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | Cause No. 25-BC08A-0003 |
| | § | |
| CHAD BLOECHER, CHAD LARGENT, | § | |
| and PRIMETECH AUTOMATION, LLC, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |

═══════════════════════════════════════════

## OPINION AND ORDER

═══════════════════════════════════════════

### *Syllabus*\*

 The Court holds that it lacks jurisdiction over the removed action. In so holding, the Court reaches two conclusions. The first conclusion is that jurisdiction does not exist under Section 25A.001(d)(1) of the Texas Government Code because there is no "qualified transaction." None of the transactions identified by Defendants, especially the construction-project bids, involves a consummated agreement or contract that would obligate or entitle a party to pay or receive consideration of at least $10 million. The second conclusion is that jurisdiction does not exist under Section 25A.004(e) of the Texas Government Code because, for jurisdiction to exist under subsection (e), jurisdiction must exist under subsection (d)(1).

---

\* NOTE: The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.

**OPINION**

[¶ 1] This action was filed in the district court on December 19, 2024, and removed without agreement to the Business Court ("Court") on February 10, 2025. Pending before the Court is Plaintiff G-Force & Associates Inc.'s ("G-Force") Motion to Remand ("Motion") filed on February 26, 2025, and heard on April 16, 2025. G-Force contends that Defendants—Chad Bloecher ("Bloecher"), Chad Largent ("Largent"), and PrimeTech Automation LLC ("PrimeTech")—have failed to prove that removal is proper. Removal is improper, according to G-Force, for two reasons: first, because it was untimely; and second, because the Court lacks jurisdiction. Motion at 1-2. G-Force contends that removal is untimely because Defendants removed more than 30 days after the action was filed. Motion at 7-13. G-Force also contends that the Court lacks jurisdiction because the action doesn't arise out of a "qualified transaction" in which the amount of controversy exceeds $10 million. Motion at 13-22. After considering the parties' arguments and the relevant law, the Court concludes that it lacks jurisdiction. Accordingly, the Court **GRANTS** the Motion.

**I. BACKGROUND**

**A. The Parties and Their Competing Businesses**

[¶ 2] G-Force provides industrial services, including automation and electrical ones, to commercial customers. Orig. Pet. ¶ 9. In January and August of 2022, G-Force hired Largent and Bloecher as an electrical manager and senior controls engineer, respectively, for its automation and electrical division. Orig. Pet. ¶¶ 13-14. In their respective roles, Largent and Bloecher had access to G-Force's proprietary information. Orig. Pet. ¶¶ 13-15.

They agreed not to divulge this information while employed and for one year after their employment with G-Force ended. Orig. Pet. ¶¶ 15-16; Orig. Pet. Exh. A.

[¶ 3] Largent's and Bloecher's employment with G-Force ended when they both resigned in late November 2024. Orig. Pet. ¶¶ 18-19; Motion at 3; Motion Exh. A ¶ 2. After resigning, they began working immediately for PrimeTech, a competitor Bloecher cofounded in October 2024 and for which he wrote a 5-year business plan in September 2024. Orig. Pet. ¶¶ 18-19; Orig. Pet. Exhs. C and D; Motion at 3; Motion Exh. A ¶ 4. Bloecher forecasted revenues of approximately $5 million and $10 million in PrimeTech's first two years. Orig. Pet. Exh. D.

[¶ 4] In early- to mid-December 2024, Defendants began competing directly with G-Force. First, PrimeTech took over a project scheduled for G-Force with Colt Midstream, a long-time customer, worth approximately $10,000 ("the Colt project"). Motion Exh. A ¶ 6. Then, PrimeTech submitted a competing bid against G-Force for the automation and electrical portion of a facility rebuild project in Hobbs, New Mexico for Coastal Chemical, a long-time G-Force customer ("the Coastal project"). Motion at 11; Motion Exh. A ¶¶ 3-4; Response Exh. A ¶¶ 2-4; Response Exh. A-2. PrimeTech's bid for the automation and electrical work was less than $4.2 million. Motion at 11; Motion Exh. A ¶ 4; Response Exh. A ¶ 4; Response Exh. A-3. Because G-Force was bidding for more than just automation and electrical work, its bid was in excess of $10 million.[1] Motion at 11; Motion Exh. A ¶ 3; Response Exh. A ¶ 3.

_____

[1] As of April 16, 2025, neither G-Force nor Primetech had been awarded work for the Coastal project.

**B. G-Force's Lawsuit and Temporary Restraining Order ("TRO")**

[¶ 5] Suspecting that Defendants were using its proprietary information to compete with it unfairly, G-Force sued Defendants in the 355th Judicial District Court of Hood County on December 19, 2024. In its petition, G-Force seeks monetary relief of more than $1 million and injunctive relief. Orig. Pet. ¶ 6. G-Force brings a myriad of claims, including misappropriation of trade secrets; conversion; breach of fiduciary duty; tortious interference with an existing contract and prospective business relationships; and conspiracy. Orig. Pet. ¶¶ 24-46. G-Force also requests a TRO, temporary injunction, and permanent injunction to enjoin Defendants from disclosing or using any trade secrets or confidential information acquired while Largent and Bloecher were employed by G-Force. Orig. Pet. ¶¶ 49-61.

[¶ 6] On the date it filed its petition, G-Force obtained a TRO against Defendants restraining them from, among other acts, using or incorporating G-Force's confidential or proprietary information and using G-Force's trade secrets, and other confidential or proprietary information, to contact, solicit or otherwise conduct business. Notice of Removal ("Notice") Exh. B. Although the TRO continues in effect pursuant to a Rule 11 agreement, the application for a temporary injunction remains pending. Notice Exh. I.

**C. Defendants' Notice**

[¶ 7] On February 10, 2025, and without G-Force's agreement, Defendants filed their Notice.[2] Defendants assert that removal is timely because they filed their Notice

---

[2] The Notice was served electronically on counsel for all parties of record on Friday, February 7, 2025, but filed with the clerk on Monday, February 10, 2025.

within the required time limits. Notice ¶ 4. *See* TEX. GOV'T CODE ANN. § 25A.006(f) (requiring notice to be filed within 30 days after stated events); TEX. R. CIV. P. 355(c)(2) (same). Defendants also assert that removal is proper because the Court has jurisdiction and authority. Notice ¶ 2. *See* TEX. GOV'T CODE ANN. § §25A.006(d) (requiring existence of jurisdiction to effectuate removal); TEX. R. CIV. P. 355(b)(2) (requiring existence of authority to effectual removal). The Court has jurisdiction, according to Defendants, because G-Force's suit arises out of a "qualified transaction" in which the amount of controversy exceeds $10 million and because G-Force seeks injunctive relief. Notice ¶ 2. *See* TEX. GOV'T CODE ANN. §§ 25A.001(14) (defining "qualified transaction"), 25A.004(d)(1) (establishing jurisdiction based on a qualified transaction), (e) (establishing jurisdiction based on injunctive relief). The qualified transaction, Defendants maintain, consists of projects, including the aforementioned Coastal and Colt ones, the monetary value of which constitutes both consideration and amount in controversy exceeding $10 million. Notice ¶ 2. *See* TEX. GOV'T CODE ANN. §§ 25A.001(14)(A) (requiring transaction supported by consideration of at least $10 million), 25A.004(d)(1) (requiring amount in controversy to exceed $10 million).

**D. G-Force's Motion**

[¶ 8] G-Force responded by filing its Motion on February 26, 2025. G-Force contends that removal is improper because Defendants neither timely removed nor established jurisdiction. Motion at 2.

[¶ 9] Removal is untimely, according to G-Force, because Defendants knew the facts allegedly establishing the Court's jurisdiction as of December 19, 2024, the date the

action was filed, but did not remove the action within 30 days thereafter as required. Motion at 1, 7-13. *See* TEX. GOV'T CODE ANN. § 25A.006(f)(1) (requiring removal within 30 days after jurisdictional facts are discovered or reasonably should have been discovered); TEX. R. CIV. P. 355(c)(2)(A) (same). G-Force insists that Defendants cannot rely on the pending application for temporary injunction to establish timeliness because they did not identify any facts learned during the pendency of the application that would permit removal more than 30 days after the action was filed. Motion at 12. *See* TEX. GOV'T CODE ANN. § 25A.006(f)(2) (requiring removal within 30 days after application for temporary injunction is granted or denied if the application was pending on the date jurisdictional facts are discovered or reasonably should have been discovered,); TEX. R. CIV. P. 355(c)(2)(B) (same).

[¶ 10] G-Force also contends that the Court lacks jurisdiction pursuant to Section 25A.004(d)(1) because: (1) there is no qualified transaction; and (2) the amount in controversy does not exceed $10 million. Motion at 13-22. G-Force asserts that there is no qualified transaction because there is no singular, completed transaction supported by consideration of $10 million provided by one of the parties to the transaction. Motion at 13-18. G-Force also maintains that the amount in controversy does not exceed $10 million, as Defendants plead in their Notice, because there is no evidence that G-Force has suffered more than $10 million in damages. Motion at 19-22.

[¶ 11] The Court lacks jurisdiction pursuant to Section 25A.004(e), according to G-Force, because jurisdiction under this section is contingent on establishing jurisdiction

pursuant to Section 25A.004(d)(1), which Defendants have assertedly failed to do. Motion at 18.

**E. Defendants' Response**

[¶ 12] In their response to the Motion, Defendants counter that removal is timely because G-Force's application for temporary injunction was pending—and remains so— when they filed their Notice. Response at 3-5. That the application remains pending means, according to Defendants, that the deadline for removal has not expired. Response at 3-5. Defendants also counter that the qualified transaction is G-Force's bid for the Coastal project and that this bid, along with the lost profits, disgorgement, and injunctive relief sought by G-Force, establish that the amount in controversy exceeds $10 million as alleged by them. Response at 5-14.

## II. TIMELINESS

[¶ 13] In the removal context, jurisdiction and timeliness are two independent analytical concepts that should be addressed in their proper order. Jurisdiction, as the term denotes, is a substantive jurisdictional issue, whereas timeliness is a procedural issue, not a jurisdictional one. *See Pretka v. Kolter City Plaza II, Inc.* , 608 F.3d 744, 751-52, 756 (11th Cir. 2010) (explaining that timeliness of removal is a procedural issue, not a jurisdictional one.); *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010) (explaining that timeliness of removal is a procedural defect, not a jurisdictional one). If the Court lacks jurisdiction, an action is simply not removable, irrespective of the timeliness of its removal, and remand is required. *See* TEX. GOV'T CODE ANN. § 25A.006(d) (requiring remand of action over which the business court lacks jurisdiction); TEX. R. CIV.

P. 355(f)(1) (requiring remand of action improperly removed). Thus, the Court should address jurisdiction first and, if necessary, timeliness second. Because the Court has concluded that it lacks jurisdiction over the removed action, there is no need to address the timeliness of removal.

### III. JURISDICTION

[¶ 14] Whether the Court has subject-matter jurisdiction is ordinarily a question of law for the Court to decide. *C Ten 31 LLC ex rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 9, 708 S.W.3d 223, 230 (3rd Div.). As the parties seeking removal, Defendants bear the burden of establishing the Court's jurisdiction. *See* TEX. GOV'T CODE ANN. §§ 25A.006(d) (requiring existence of jurisdiction to effectuate removal), (f) (requiring party seeking removal to establish jurisdiction). As mentioned previously, Defendants contend that the Court has jurisdiction pursuant to Sections 25A.004(d)(1) and (e) of the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 25A.004(d)(1) (establishing jurisdiction based on a qualified transaction), (e) (establishing jurisdiction based on injunctive relief); *see also id.* § 25A.001(14) (defining qualified transaction). Defendants are mistaken. They have failed to establish the Court's jurisdiction under either section.

**A. Jurisdiction Pursuant to Section 25A.004(d)(1)**

[¶ 15] Defendants insist that the Court has jurisdiction pursuant to Section 25A.004(d)(1). This section provides that:

> (d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10

million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:

(1) an action arising out of a qualified transaction[.]

.    .    .    .

TEX. GOV'T CODE ANN. § 25A.004(d)(1). A "qualified transaction" is statutorily defined as:

a transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party:

(A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million; or

(B) lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million.

TEX. GOV'T CODE ANN. § 25A.001(a)(14). To establish jurisdiction under Section 25A.004(d)(1), Defendants must prove that the action (1) arises out of a qualified transaction and (2) involves an amount in controversy exceeding $10 million. If Defendants fail to prove either element, jurisdiction is absent.

### 1. Qualified Transaction

[¶ 16] Defendants argue that the Coastal project is a qualified transaction as defined by Section 25A.001(a)(14)(A) because a bid process guaranteeing at least $10 million to the successful bidder comports to the definition's plain language. Response at 5-7. The bid process so comports, Defendants insist, because it is a transaction, *i.e.*, an instance of carrying on or conducting a business negotiation, under which one party to the transaction,

*i.e.*, G-Force, would be entitled to receive consideration exceeding $10 million as the successful bidder. Response at 5-7. In other words, a qualified transaction, Defendants maintain, can encompass a prospective transaction that involves only one party to the action and that is supported by consideration in the form of revenue provided by a third-party.

[¶ 17] Determining the meaning of qualified transaction as defined by 25A.001(a)(14)(A) is a matter of statutory construction and, thus, a question of law for the Court. *C Ten 31 LLC*, 2025 Tex. Bus. 1, at ¶ 8 and n.4, 708 S.W.3d at 229-30 and n.4; *Tema Oil & Gas Co. v. ETC Field Servs., LLC*, 2024 Tex. Bus. 3, ¶¶ 12-13, 705 S.W.3d 226, 230 (8th Div). The objective in construing a statute is to ascertain and effectuate legislative intent. *Tema*, 2024 Tex. Bus. 3, at ¶ 13, 705 S.W.3d 226 at 230. The legislative intent of a statute is ordinarily expressed in the plain and common meaning of its text unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results. *Id.* (quotations marks omitted). In construing the plain and common meaning of statutory text, the words and phrases are considered in the context and framework of the entire statute and construed as a whole. *Id.* The words and phrases are also construed according to the rules of grammar and usage. *Id.* The presumption is that the legislature chose the statutory text with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *Id* (quotations marks omitted). When a statute is clear and unambiguous on its face, *i.e.*, when the statutory text is not susceptible to more than one reasonable interpretation and alone conveys legislative intent, there is no need to resort to extrinsic aids to construe the text. *Id.* In such a situation,

the inquiry begins and ends with the text. *C Ten 31 LLC*, 2025 Tex. Bus. 1, at ¶ 8, 708 S.W.3d at 230.

### a. The Coastal Project is not a Qualified Transaction

[¶ 18] The Coastal project is not a qualified transaction as defined by Section 25A.001(a)(14)(A). This section is unambiguous and clear on its face, and no party to this action contends otherwise. The plain language of Section 25A.001(a)(14)(A) reflects the legislative intent that a qualified transaction means a consummated agreement or contract. That intent is manifested in the intentional use of the words "party," "transaction," "consideration," "pays", "receives," "is obligated to pay," and "is entitled to receive" in the statutory definition. Reading the statutory definition as a whole and in context, these words signify that a qualified transaction is a transaction characterized by the reciprocal exchange of obligations supported by consideration between and among all parties in the transaction, *i.e.*, a consummated agreement or contract. There can be no qualified transaction in the absence of a consummated agreement or contract binding the parties to perform their bargained-for mutual obligations. *See Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting*, 533 F. Supp. 3d 367, 375-76, n.2, 380 (N.D. Tex. 2020) (concluding that ten-year agreement executed by insurer and franchisees under which insurer would have received royalties of nearly $2 million over the agreement's lifetime was a "qualified transaction" as defined by Section 271.001 of the Texas Business and Commerce Code because the words "transaction" and "consideration" in the definition indicate that

determining the value of consideration is measured at the time of the transaction, *i.e.*, when the franchise agreement was executed, rather than at the time of the dispute).[3]

[¶ 19] The bidding process characterizing the Coastal project is simply not a qualified transaction as defined by Section 25A.001(a)(14)(A) for various reasons.

[¶ 20] First, the parties' pending bids, PrimeTech's for nearly $4.2 million and G-Force's for more than $10 million, are not consummated agreements or contracts binding the parties to perform their bargained-for mutual obligations. Instead, they are contemplated transactions, contingent and speculative in nature and characterized by the ever-present possibility that they will never be effectuated notwithstanding Defendants' contention to the contrary. Defendants contend that Coastal Chemical has committed to paying consideration of at least $10 million to the winning bidder, but their contention is belied by the proviso in Coastal's request for quotation that "Coastal reserves the right to reject any and/or all bids without reason or cause." Response Exh. A-2 at 3. In fact, as

---

[3] Section 271.001(1) of the Texas Business and Commerce Code defines "qualified transaction" as "a transaction under which a party…pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $1 million…." TEX. BUS. & COM. CODE ANN. § 271.001(1). This definition is very similar to the current definition of qualified transaction in Section 25A.001(14)(1)(A). Indeed, the Court notes that the introduced version of HB 19—the legislation codifying Chapter 25A of the Texas Government Code—initially defined qualified transaction as having "the meaning assigned by Section 271.001, Business & Commerce Code." Tex. H.B. 19, 88th Leg., R.S. (2023) (introduced version), https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=88R&Bill=HB19 (last visited May 13, 2025). Given that the legislation creating Section 25A initially incorporated Section 271.001's definition of qualified transaction and that the two current definitions of the term are very similar, the Court finds the discussion of qualified transaction in *Goosehead* instructive.

*Goosehead* did not discuss whether the term "party" in the definition of qualified transaction in Section 271.001 means that a party to the transaction has to be a party to the action, ostensibly because it was not an issue given that the litigants were the parties to the transaction and the action. Here, in contrast, the litigants do dispute the meaning of party in the definition of qualified transaction in Section 25A.001(a)(14)(A). Defendants argue that the term party is not limited to a party to the lawsuit but includes any party to the transaction, whereas G-Force contends that the term party means a party to the action. But the Court does not need to address this issue to decide the Motion.

mentioned earlier, because Coastal had not accepted any bid for the Coastal project as of April 16, 2025, Coastal has not agreed yet to pay, and G-Force has not yet agreed to receive, consideration with an aggregate value of at least $10 million. Furthermore, even if Coastal were to accept PrimeTech's bid for nearly $4.2 million, PrimeTech's bid would not satisfy the $10 million-consideration requirement.

[¶ 21] Second, although Defendants argue that the bidding process for the Coastal project is a qualified transaction because the statutory definition is broad enough to encompass such a potential transaction, the authorities on which they rely for this argument are unpersuasive.

[¶ 22] In their Response, Defendants assert that the legislature could not have intended to exclude bidding processes from the definition of a qualified transaction because a bid process entitling G-Force to receive consideration exceeding $10 million as the successful bidder is a "transaction" as that term is ordinarily understood. Response at 6-7. Defendants cite the definitions of "transaction" and "transact" in various dictionaries in support of their assertion, arguing that these definitions establish that an instance of transacting or an instance of conducting encompasses "carrying to completion" and "to carry on or conduct (negotiations, business, etc.)," respectively. Response at 6-7. *See Transaction*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/transaction (last visited May 13, 2025); *Transact*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/transact (last visited May 13, 2025); *Transaction*, Black's Law Dictionary (12th ed. 2024). But the relevant definition is qualified transaction as statutorily defined, not transaction as ordinarily

defined. When the legislature has defined a term, a court is bound to follow that definition. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Furthermore, to define qualified transaction by considering solely the term transaction without considering the other relevant terms previously identified would violate the maxim of statutory construction that words and phrases are considered in context and construed as a whole.

[¶ 23] At the hearing, Defendants cited *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437 (Tex. App.—Fort Worth 2023, pets. denied), for the proposition that a qualified transaction can encompass a prospective transaction. The primary issue in *NexPoint* was whether the commercial-speech exemption of the Texas Citizens Participation Act (TCPA) applied to an investment trust's statements characterizing a shareholder's letter as (1) an expression of the shareholder's interest in a "transaction" involving the trust and (2) accusing the shareholder's principals and allies of complicity in a "short and distort" campaign against the trust. 674 S.W.3d at 441-43. In holding that the exemption applied, the court concluded, *inter alia*, that the statements arose out of a "commercial transaction" because the parties contemplated a business deal, and a "commercial transaction" can include conduct or statements merely proposing a business deal. *Id*. at 448-49.

[¶ 24] But *NexPoint* is inapposite for two reasons. First, in *NexPoint*, the court relied on the common meaning of commercial transaction as a business deal because the term is undefined in the TCPA. 674 S.W.3d at 448. Here, in contrast, there is no need to rely on the common meaning of qualified transaction because the term is defined in Section 25A.001(14). Second, and more importantly, the commercial-speech exemption of the

TCPA applies to "a commercial transaction in which the intended audience is an actual or *potential* buyer or customer." TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(2)) (emphasis added). By its very terms, the commercial speech exemption does not require a completed transaction. *NexPoint*, 674 S.W.3d at 448. Consequently, in the TCPA context, a proposed transaction is a commercial transaction for purposes of invoking the commercial-speech exemption. Here, in contrast, a proposed transaction is not a qualified transaction for purposes of invoking the Court's jurisdiction pursuant to Section 25A.004(d)(1).

[¶ 25] Defendants also argue that, if a completed transaction is required to establish jurisdiction under Section 25A.004(d)(1), the Court would **never have** jurisdiction under this section over a claim for tortious interference with a prospective business relationship, a result the legislature assertedly would not have intended. Response at 7-8. Defendants' slippery slope argument falls flat. The legislature did not expressly address tortious interference claims in Section 25A.004. However, the tort is broad enough to encompass claims concerning the interference of a continuing business relationship with an existing customer, not just a prospective business relationship with a prospective customer, especially if that existing business relationship was contractual in nature. *See Faucette v. Chantos*, 322 S.W.3d 901, 913-16 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that the defendants' conduct in inducing third parties to invoke 30-day termination provisions in supply contracts with plaintiffs supported a claim for tortious interference with prospective business relations). Thus, it is conceivable, that a party could bring a claim for tortious interference with a prospective business relationship under Section 25A.004(d)(1). A party could do so by alleging that it suffered damages exceeding

$10 million because it lost the prospect of a continuing business relationship with an existing customer that would have entitled the party to receive consideration of at least $10 million based on their contractual relationship but for another party's wrongful conduct in inducing the customer to terminate the relationship.

**b. The Colt Project and Other Miscellany are not Qualified Transactions**

[¶ 26] In a footnote in their Response, Defendants assert that "there are other completed transactions relevant to this case with values [exceeding] $10 million[,]" citing the anticipated revenues identified in PrimeTech's business plan as proof that PrimeTech's formation is a completed transaction worth more than $10 million. Response at 8 n.1. But Defendants' assertion is unavailing. They don't explain how PrimeTech's formation or business plan constitutes a qualified transaction as defined in Section 25A.001(a)(14)(A). And Defendants do not identify any other transaction, including the Colt project, obligating or entitling a party in such a transaction to pay or receive consideration with an aggregate value of at least $10 million.

**2. Amount in Controversy**

[¶ 27] As mentioned above, to establish jurisdiction under Section 25A.004(d)(1), Defendants are required to prove that this action both (1) arises out of a qualified transaction and (2) involves an amount in controversy exceeding $10 million. Because Defendants have not proved that this action arises out of a qualified transaction, they have failed to establish the Court's jurisdiction. Consequently, the Court need not determine whether the action involves an amount in controversy exceeding $10 million.

**B. Jurisdiction Pursuant to Section 25A.004(e)**

[¶ 28] Defendants also insist that the Court has jurisdiction pursuant to Section 25A.004(e) because this action seeks injunctive relief. Notice ¶ 2. Section 25A.004(e) provides that:

> (e) The business court has civil jurisdiction concurrent with district courts in an action seeking injunctive relief or a declaratory judgment under Chapter 37, Civil Practice and Remedies Code, involving a dispute based on a claim within the court's jurisdiction under Subsection (b), (c), or (d).

TEX. GOV'T CODE ANN. § 25A.004(e). "Subsection (e) grants the Court jurisdiction over actions seeking specific types of relief—'injunctive relief or a declaratory judgment'—that otherwise might not be available for disputes based on claims within the Court's jurisdiction under Subsections (b), (c), or (d)." *C Ten 31 LLC*, 2025 Tex. Bus. 1, at ¶ 22, 708 S.W.3d at 234. But, in this action, the Court does not have jurisdiction pursuant to Section 25A.004(e), as urged by Defendants, because there is no claim within the Court's jurisdiction under subsection (d)(1), a prerequisite for establishing jurisdiction under subsection (e). *See C Ten 31 LLC,* 2025 Tex. Bus. 1, at ¶¶ 18-24, 708 S.W.3d at 232-34 (concluding that the Court does not have jurisdiction pursuant to Subsection (e) unless the party satisfies Subsection (b), (c), or (d)'s jurisdictional prerequisites).

### IV. CONCLUSION

[¶ 29] Consistent with this opinion, the Court **GRANTS** G-Forces's Motion and **REMANDS** the action to the 355th Judicial District Court of Hood County. *See* TEX. GOV'T CODE ANN. § 25A.006(d) (action must be remanded to the court in which the action was originally filed); TEX. R. CIV. P. 355(f)(1) (same).

**IT IS SO ORDERED**.

JERRY D. BULLARD
Judge of the Texas Business Court,
Eighth Division

SIGNED ON: May 14, 2025