**Cirilo OSTI and Arturo Medina, Appellants,**

v.

**Marion L. SAYLORS, Appellee.**

**No. 01–97–00173–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 1, 1999.

Rehearing Overruled May 28, 1999.

---

Ralphaell V. Wilkins, Houston, for Appellants.

Patricia Hair, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices HEDGES and NUCHIA.

## OPINION

SCHNEIDER, Chief Justice.

This is a wrongful death case. Socorro Osti and her husband, Arturo Medina, rented an apartment from Marion Saylors, appellee. Cirilo Osti, father of Socorro

Osti, sued Saylors as a result of the death of Socorro and her three children in a fire that occurred in the apartment. Arturo Medina, the father of two of the children, intervened in the suit. The trial court granted Saylors's motion for summary judgment. In one point of error, Cirilo Osti and Arturo Medina ("Plaintiffs") argue the trial court erred in granting summary judgment because (1) Saylors, as a lessor, owed his tenants certain duties imposed under the City of Houston Building Code and under the common law and (2) Saylors did not conclusively establish the absence of a genuine issue of material fact on whether Saylors's negligence proximately caused the deaths of Socorro and her three children ("decedents"). We reverse and remand.

## FACTS

Saylors bought the premises in question in 1980. Saylors leased the first and third floors to Socorro Osti and Arturo Medina.[1] An interior stairway connected the two floors. Saylors leased the second floor of the three story building to the Aguilars. At the time of the fire, there was only one stairway escape from the third floor.

On August 11, 1993, Arturo left the house early in the morning and went to pick up a friend. Shortly after they returned, Arturo's friend pointed out that the house was on fire. Arturo called out to Socorro to throw the children out the window to him. Arturo only heard Socorro say his name. The fire traveled up the interior stairs, and Socorro and the three children went from their bedroom to Arturo's bedroom via a door that connected the two bedrooms. Socorro and her three children died in Arturo's bedroom.

During his deposition, Saylors testified that he had discussed with Socorro on several occasions how to escape in the event of a fire. In the third floor bathroom, Saylors had replaced a three feet by three feet glass window with a plastic win-

1. Saylors did not have a written lease agreement with Socorro and Arturo.

dow that could be pushed out in the event of a fire. To escape, Socorro could have stepped on the toilet, pushed out the window, climbed out the window onto a roof, and then climbed down a scaffold on the north side of the building. According to Saylors, the other means of escape were the interior stairs and the four windows located in each of the third floor bedrooms. Saylors further testified that it would be his decision to make structural changes to the property. He did not expect his tenants to build a fire escape, and his tenants did not expect to build one either.

Anthony Arlon Balay, a chief building inspector for the City of Houston, testified in his deposition that the means of egress or fire escapes are structural in nature. Balay also testified that in May 1993, the City of Houston adopted its current Building Code. The Code incorporated chapter 1, division 1 of Life Safety Appendix (the "appendix"), which had been in effect since 1991. The appendix covers life safety requirements for buildings in existence as of January 1, 1986. According to Balay, the third floor of the building required two exits to be in compliance with the appendix. The escape path from the third floor bathroom was not in compliance with the appendix because it was too close to the other exit. In addition, a nine-foot scaffold, which was on the north side of the building, was not a satisfactory means of escape for a mother and her three children. Finally, jumping out of the bedroom windows, which were approximately 16 feet above the ground, was not an approved method of egress. Had Balay inspected the building in 1991, it would not have passed inspection. Neither building on the property had a certificate of compliance with the building code.

## PROCEDURAL HISTORY

Cirilo Osti sued Saylors for negligence alleging (1) he did not provide working smoke detectors and adequate means of egress, and (2) he did not ensure that no flammable materials were stored in the building. Arturo intervened in this suit alleging Saylors was negligent for the reasons stated above. In addition, Arturo alleged Saylors violated the building code adopted by the City of Houston by failing to provide the proper number of exits or fire escapes in the proper location, failing to obtain a certificate of compliance for existing structures, and failing to obtain a building permit for work done on the premises.

Saylors filed a motion for summary judgment and a supplement to this motion arguing that (1) the landlord/tenant relationship does not create a duty on the part of the landlord to keep the premises safe; (2) any exceptions to this rule did not apply to this case; (3) Saylors, as a landlord, was not liable for open and obvious conditions in existence at the time his tenants took possession of the premises; and (4) the lack of egress could not have been a proximate cause of the death of Socorro and her children because they apparently did not have time to exit the building anyway. In their responses, Cirilo Osti and Arturo argued (1) Saylors violated his duties created by the Building Code and by the RESTATEMENT (SECOND) OF TORTS §§ 360 & 361 (1965) and (2) the decedents had no useable means of escape. The trial court granted Saylors's motion for summary judgment, stating that no genuine issues of material fact existed.

## STANDARD OF REVIEW

Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Randall's Food Mkts.,* 891 S.W.2d at 644; *Lawson,* 888 S.W.2d at 33. We will take all evi-

dence favorable to the nonmovant as true. *Id.* As movant, the defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.— Houston [1st Dist.] 1993, writ denied). After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris,* 924 S.W.2d 375, 376 (Tex.1996). We will affirm the summary judgment if any of the theories advanced in the motion, ruled on by the judge, and preserved for review are meritorious. *See Cincinnati Life Ins. Co. v. Cates.,* 927 S.W.2d 623, 626 (Tex.1996).

### DUTY

The existence of a duty is question of law for the court to decide from the facts surrounding the occurrence in question. *Walker,* 924 S.W.2d at 377. Plaintiffs claim Saylors's legal duties as a landlord arise under the building code adopted by the City of Houston in an ordinance and under common law.[2]

### Common Law Duty

Plaintiffs contend that Saylors owed his tenants a duty under the common law to exercise reasonable care in discovering the risk of having inadequate means

of egress and in making a safe second means of egress. We agree.

Generally, a landlord has no duty to tenants or their invitees for dangerous conditions on the leased premises. *Johnson County Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996) (citing RESTATEMENT (SECOND) OF TORTS § 365 (1965)). "This general rule stems from the notion that a lessor relinquishes possession or occupancy of the premises to the lessee." *Id.* However, the Texas Supreme Court has recognized several exceptions to this rule. For example, a lessor may be liable for injuries caused by a defect on a portion of the premises that remains under the lessor's control. *Id.; see also Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 514–15 (Tex.1978); RESTATEMENT (SECOND) OF TORTS §§ 360,[3] 361[4] (1965). Section 361 applies to "the maintenance of walls, roofs, and foundation of an apartment house or office building ... [and] *to any other part of the land the careful maintenance of which is essential to the safe use of the rooms* or offices or portion of land leased to the various lessees, such as the central heating, lighting, or water system." RESTATEMENT (SECOND) OF TORTS § 361 cmt. b (1965) (emphasis added).

Saylors contends (1) the residence was in the possession and control of Socorro and Arturo and (2) the means of egress, or lack thereof, was not a defect that was

---

**2.** We do not address plaintiffs' contention that Saylors owed a duty under the Life Safety Appendix of the building code adopted by the City of Houston.

**3.** Section 360 provides, in relevant part:

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee ... for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

RESTATEMENT (SECOND) OF TORTS § 360 (1965).

**4.** Section 361 provides, in relevant part:

A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee ... for physical harm caused by a dangerous condition upon the part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved, and (b) could have made the condition safe.

RESTATEMENT (SECOND) OF TORTS § 361 (1965).

unknown to Socorro. Both contentions are without merit. First, the uncontroverted summary judgment evidence indicates Saylors was in control of structural changes and did not expect his tenants to build a safe fire escape. Hence, the landlord in this case retained and controlled a part of the premises that was necessary for the safe use of or exit from the premises. *See* RESTATEMENT (SECOND) OF TORTS § 361. Second, section 361 applies irrespective of whether a lessee knew or, by the exercise of reasonable care, could have discovered the dangerous condition maintained by the lessor on the part of the land within the lessor's control. *See* RESTATEMENT (SECOND) OF TORTS § 361 cmt. a (1965).

We find Saylors owed his tenants a duty under section 361 of the Second Restatement, which has been adopted in Texas.

### Negligence Per Se

■ The threshold questions in a negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent. *Perry v. S.N.,* 973 S.W.2d 301, 305 (Tex.1998); *see also Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 549 (Tex.1985) ("The unexcused violation of a statute or ordinance constitutes negligence as a matter of law if such statute or ordinance was designed to prevent injury to the class.").

In *Nixon,* the Texas Supreme Court recognized a standard of conduct in a city ordinance that was separate and apart from a common law duty. *See Nixon,* 690 S.W.2d at 549. The city ordinance in *Nixon* required property owners to keep the doors and windows of a vacant structure securely closed to prevent unauthorized entry. *Id.* at 548. The court construed this ordinance as being designed to deter criminal activity by reducing the conspicu-

ous opportunities for criminal conduct. *Id.* at 549.

■ Plaintiffs contend chapter one, division one, section 111(a) of the appendix to the 1991 Uniform Building Code creates a legislatively imposed standard of conduct for landowners such as Saylors. Section 111(a) provides, in relevant part:

Number of Exits. Every floor above the first story used for human occupancy shall have access to at least two separate exits, one of which may be an exterior fire escape complying with Subsection (d) of this section.

HOUSTON, TX., UNIFORM BUILDING CODE Ch. 1, Div. 1 § 111(a) (1993). Chapter one, division one is entitled "Life–Safety Requirements for Existing Buildings" and was adopted by the City of Houston in May 1993.[5] Hence, it was in effect at the time of the fire in this case.

The appendix provides that the purpose of division 1 "is to provide a reasonable degree of safety to persons occupying existing buildings by providing for alterations to such existing buildings which do not conform with the minimum requirements of this code." *Id.* at Div. 1. We find that section 111(a) was designed to ensure that the occupants of a building would be able to exit safely a building in the event of a fire. Further, compliance with section 111(a) would directly protect the occupants of a building. Socorro and her children, all of whom were not able to escape from the fire on the third floor of their apartment, fall within the class of people whom the appendix was designed to protect.

Balay, a chief building inspector for the City of Houston, testified that the third floor of the building, which was occupied by Socorro, her husband, and her three children, required two exits on the third floor to be in compliance with the appendix. Saylors testified in his deposition that Socorro and her children had three means

**5.** The trial court took judicial notice of the appendix that was adopted by the City of Houston.

of egress: the exterior fire escape, the escape from the bathroom window, and jumping out of the bedroom windows. According to Balay, the third floor was not in compliance with the appendix. That is, the fire escape from the third floor bathroom was not in compliance with the appendix for two reasons: (1) it was too close to the stairs, which provided the other means of egress; and (2) the scaffold, which formed a part of the escape path, was not satisfactory for a mother and three children. Further, jumping out of the 16–feet high bedroom windows was not a satisfactory means of escape.

■ Although we have determined that Socorro and her children are within the class of persons whom the appendix was meant to protect, and that they suffered the kind of injury that the appendix intended to prevent, we must still determine whether it is appropriate to impose tort liability for violations of the appendix. In *Perry,* the Texas Supreme Court examined several factors in making this determination: (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty; (2) whether the statute or provision puts the public on notice by clearly defining the required conduct; (3) whether applying negligence per se to the provision would create liability without fault; (4) whether negligence per se would impose ruinous liability disproportionate to the seriousness of the defendant's conduct; (5) whether the provision would impose liability on a broad and wide range of collateral wrongdoers; and (6) whether the injury resulted directly or indirectly from the violation of the statute. *Perry,* 973 S.W.2d at 308 (declining to impose negligence per se because it would impose immense potential liability under an ill-defined standard on a broad class of people whose relationship to the violation of the provision was extremely indirect). These factors are not exclusive, and the decision to impose negligence per se is not resolved

by counting how many factors lean each way. *Id.*

■ In this case, we have already determined that this case falls within one of the established, common law exceptions to the no-duty rule for landlords. The appendix merely defines more precisely what conduct breaches the duty to make a dangerous condition, located on a portion of land retained in the landlord's control, safe. Section 119 of the appendix imposes a criminal penalty on an owner who does not comply with the appendix:

> (b) Duty, Penalty. Any person having ownership, possession or control of a building who fails to comply with any applicable provision of this chapter shall be guilty of a misdemeanor which, upon conviction, shall be punishable by a fine of not less than $250.00 or more than $1,000.00. Each day that any violation continues shall constitute and be punishable as a separate offense.

We acknowledge that section 119 would create liability without fault. Nevertheless, when a statute criminalizes conduct that is also governed by a common law duty, "applying negligence per se causes no great change in the law because violating the statutory standard of conduct would usually also be negligence under a common law reasonableness standard." *Id.* at 306.

On the question of notice, the appendix clearly defines the required conduct by providing how many exits are required and by detailing where the exits are to be located and how they are to be designed. Applying negligence per se also does not impose ruinous liability disproportionate to the seriousness of the defendant's conduct. The conduct in question involves the failure to provide adequate means of egress so the occupants of a building can escape safely from a fire, a potentially life-threatening event.

We also do not believe that division one of chapter one of the appendix imposes liability on a broad and wide range of

collateral wrongdoers. Section 119(b) is restricted to imposing a penalty on owners or persons in possession or control of a building for violating life safety requirements for existing buildings set out in division one of the appendix. Division one covers exits, enclosures of vertical shafts, building access or sprinkler protection, standpipes, smoke detectors, separation of occupancies, and fire alarms.

Finally, the link between Saylors's violation of the appendix, *i.e.*, failure to provide adequate means of egress, and Socorro's and her children's perishing in the fire, is strong. Civil liability has been imposed when the connection between the defendant's conduct and the plaintiff's injury was more attenuated than the link in this case. *See, e.g., El Chico*, 732 S.W.2d at 312–13; *Nixon*, 690 S.W.2d at 548–49 (statutory violations caused the plaintiff's injury by facilitating the tort of a third party).

After considering the factors set out *Perry*, we conclude that Plaintiffs may assert negligence per se based on Saylors's violation of the appendix.

### PROXIMATE CAUSE

█ Plaintiffs contend Saylors did not conclusively negate that the violation of his duties proximately caused the death of Socorro and her children. We agree.

█ The two elements of proximate cause are cause in fact and foreseeability. *Nixon*, 690 S.W.2d at 549. "Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Id.* Foreseeability denotes "that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Id.* at 550.

Saylors does not specify which element of proximate cause was not met. Instead, Saylors merely argues that even if the means of escape were inadequate, the decedents simply did not have time to make use of them. The decedents were not found near any windows or near the bathroom exit; instead, they were found in Arturo's bedroom, which was located in the southern portion of the third floor. Arturo speculated in his deposition that one reason why decedents did not make use of the bathroom fire escape was because they simply did not have time and because they were overcome by smoke.

However, Saylors ignores Balay's deposition, in which he testified that the bathroom exit on the north side of the building was too close to the stairs—the other means of egress—and a proper fire escape should have been built outside the third floor bedrooms. The summary judgment evidence indicates that the fire traveled up the stairs, which was also located on the north side of the building, and that Socorro and her children were found in Arturo's bedroom, which was on the south side of the building.

We conclude a genuine issue of material fact regarding whether the presence of a proper fire escape outside the third floor bedrooms would have prevented the death of Socorro and her children. We sustain plaintiffs' sole point of error.

We reverse the judgment and remand this cause to the trial court.

Justice HEDGES concurring and dissenting.

ADELE HEDGES, Justice, concurring and dissenting.

While I agree with the majority's holding on appellants' claim of common law negligence, I disagree with its holding that their claim of negligence per se meets the requirements of *Perry v. S.N.*, 973 S.W.2d 301, 308 (Tex.1998).