

**The Business Court of Texas,
Third Division**

| | | |
|---|---|---|
| JERRY B. REED, | § | |
| *Plaintiff*, | § § § | |
| v. | § | Cause No. 25-BC03A-0007 |
| ROOK TX, LP, et al., | § § § | |
| *Defendants*. | § § | |

---

*Syllabus*[*]

---

On a renewed motion to remand, the Court holds that it lacks subject-matter jurisdiction over the action as pleaded in the plaintiff's Fourth Amended Petition and remands the case. The Court concludes that it (a) cannot exercise supplemental jurisdiction because the plaintiff never agreed that the action could proceed in this Court; (b) does not have qualified-transaction jurisdiction because the value of the consideration for the alleged prospective contract, determined at the time of the transaction, would be below the minimum; and (c) does not have trade-regulation jurisdiction because the alleged negligence *per se* claim, if recognized in Texas, would be a tort claim rather than a trade-regulation claim.

---

[*] The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



**The Business Court of Texas,
Third Division**

| | | |
|---|---|---|
| JERRY B. REED, | § | |
| *Plaintiff,* | § § § | |
| v. | § | Cause No. 25-BC03A-0007 |
| ROOK TX, LP, et al. | § § | |
| *Defendants.* | § § | |

## OPINION AND ORDER

¶1    Before the Court is plaintiff Jerry B. Reed's renewed motion to remand. The Court **GRANTS** the motion and **REMANDS** this action to the 353rd District Court in Travis County, Texas.

### Introduction

¶2    This case has proved itself the exception to the rule in many instances, but it exemplifies at least one: the plaintiff is the master of the complaint.[1] Although

---

[1] *See, e.g.*, *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–399 (1987)); *Tex. Health & Human Servs. Comm'n v. Kadia*, 704 S.W.3d 84, 106 (Tex. App.—Austin 2024, no pet.) (citing *Heard v. Moore*, 101 S.W.3d 726, 728 (Tex. App.—Texarkana 2003, pet. denied), which in turn cites *Tex. Alcoholic Beverage Comm'n v. Macha*, 780 S.W.2d 939, 941 (Tex. App.—Amarillo 1989, writ denied)).

this is not the kind of case one might typically expect to find in the Business Court, Reed (perhaps unintentionally) pleaded his way into this Court's jurisdiction by alleging claims regarding the Rook defendants' governance, governing documents, and internal affairs.[2] Now, although later events generally do not divest a court of jurisdiction once properly acquired,[3] Reed has successfully pleaded his way out of this Court's jurisdiction by removing all such claims from his pleadings. Because the jurisdictional statutes asserted by the defendants do not give this Court subject-matter jurisdiction over this action, the Court remands it.[4]

---

[2] *Reed v. Rook TX LP*, 2025 Tex. Bus. 23, ¶ 3, 2025 WL 1713358, at *1 (3d Div) [hereafter, *Reed I*].

[3] Texas courts have primarily applied this general rule to hold that when a court's amount-in-controversy limit is satisfied at the time of filing, the court will not lose jurisdiction later if the passage of time causes the damages to increase beyond the limit. *E.g., Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996); *Mr. W. Fireworks, Inc. v. Mitchell*, 622 S.W.2d 576, 577 (Tex. 1981) (per curiam); *Isbell v. Kenyon-Warner Dredging Co.*, 261 S.W. 762, 763 (1924). Federal courts have a similar line of cases holding that if a federal district court has jurisdiction at the time of removal, subsequent developments that take the amount in controversy outside the amount-in-controversy limit will not divest the court of jurisdiction. *See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). Similarly, there is a line of federal cases holding that when diversity jurisdiction exists at the time of removal, jurisdiction is not lost if one of the parties later relocates such that it is no longer diverse. *See Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) (collecting cases); *see also Royal Canin*, 604 U.S. at 38 n.8. But post-removal pleading amendments that destroy diversity by adding a nondiverse party *can* divest federal courts of diversity jurisdiction. *See Royal Canin*, 604 U.S. at 38. The United States Supreme Court also recently held that, although a district court had federal-question jurisdiction at the time of removal, the court lost jurisdiction when the plaintiff amended her pleadings after removal to omit any federal-law allegations. *Id.* at 25–26, 43–44. And of course, in both Texas and federal court, later events that render an action moot will divest the court of jurisdiction. *See, e.g. Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78–79 (2013). Ultimately, as explained below, the Court need not decide the scope of this general rule here because the Court never had jurisdiction under the jurisdictional bases asserted.

[4] TEX. GOV'T CODE § 25A.006(d); TEX. R. CIV. P. 355(f)(1); *C Ten 31 LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 7, 708 S.W.3d 223, 229 (3d Div.).

**Background**

¶3     Reed won a $7.5 million Lotto Texas jackpot on May 17, 2023.[5] A few years later, Reed brought this suit in the 353rd District Court in Travis County, Texas, alleging that the defendants[6] rigged the April 22, 2023 Lotto Texas drawing to fraudulently claim a $95 million jackpot the month before his win.[7] He alleges that if the defendants had not done so, most of that money probably would have stayed in the jackpot until his win in May 2023, such that he would have won $88 million instead of only $7.5 million.[8]

¶4     In previous pleadings, Reed alleged that all defendants conspired to rig the April 22 drawing and were jointly and severally liable for any resulting injury.[9] One theory on which Reed asserted such liability was that when defendant Rook GP (Rook TX's general partner) claimed the $95 million winnings on behalf of Rook TX, it violated Section 466.308 of the Texas Lottery Act by misrepresenting on the claim form that Rook TX was formed and obtained the winning ticket before the

---

[5] Fourth Am. Pet. at ¶ 80.

[6] The defendants are Rook TX, LP; Rook GP, LLC; Qawi and Quddus, Inc.; Lottery Now, Inc.; ColossusBets Ltd.; Autolotto, Inc.; Lottery.com, Inc.; AltX Management, LLC; White Swan Data Ltd.; Lawrence Anthony DiMatteo III; Ryan Dickinson; Barnard Marantelli; and Zeljko Ranogajec. Reed nonsuited his claims against former defendant Matthew Clemenson, without prejudice, on July 9, 2025. *See* TEX. R. CIV. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) (observing that timely nonsuit is effective upon filing and "[n]o court order is required").

[7] Fourth Am. Pet. at ¶¶ 1, 54–74.

[8] Fourth Am. Pet. at ¶¶ 2, 80–81. Plaintiff alleges that the difference between the $7.5 he won and the $88 million he could have won is over $52 million in present-value terms. *Id.* at ¶¶ 90–91.

[9] Third Am. Pet. at ¶¶ 105–08; Second Am. Pet. at ¶ 59.

drawing, when in fact the entity was not formed until afterward.[10] He also alleged Rook TX and Rook GP were "formed as vehicles to hide the identity of the company(s) and individual(s) who received the proceeds of the illegal game rigging scheme."[11] Later, Reed added express allegations that the Rook defendants "are shams created to perpetrate a fraud" such that "their corporate veils should … be pierced."[12]

¶5　　The Rook defendants timely removed the case to this Court, asserting jurisdiction under Section 25A.004(b)(2) of the Government Code,[13] which grants the Court jurisdiction over actions "regarding the governance, governing documents, or internal affairs of an organization."[14] Reed timely moved for remand, arguing lack of jurisdiction. This Court denied the motion to remand, holding:

> The Court … has jurisdiction over this action because Reed's claims against Rook (and against all defendants through his derivative theories) concern (a) Rook's formation, as effectuated by its governing documents, (b) the legitimacy of Rook's purpose and operations, and (c) whether Reed can recover Rook's lottery proceeds from Rook and/or its interest holders and other payees. While these are not the

---

[10] Third Am. Pet. at ¶¶ 63–64; Second Am. Pet. at ¶¶ 47–49.

[11] Second Am. Pet. at ¶ 46.

[12] Third Am. Pet. at ¶ 62. The explicit reference to piercing the corporate veil was added in Reed's Third Amended Petition.

[13] Notice of Removal at 1–3. The Rook defendants also asserted jurisdiction under Section 25A.004(b)(7), which grants jurisdiction over actions arising out of the Business Organizations Code, and supplemental jurisdiction under Section 25A.004(f). *See* Notice of Removal at 3–4; TEX. GOV'T CODE § 25A.004(b)(7), (f).

[14] TEX. GOV'T CODE § 25A.004(b)(2).

only matters that Reed's action concerns, neither are they tangential or extraneous matters.[15]

The Court pointed out that Reed asserted these facts as a basis of liability under all of his causes of action and, through his derivative claims, as a basis for liability against all defendants.[16]

¶6    The Rook defendants then moved to dismiss Reed's claims under Rule 91a.[17] Five days before the hearing, Reed filed a Third Amended Petition, adding and dropping claims and fleshing out factual allegations.[18] The Rook defendants again moved to dismiss under Rule 91a,[19] and Reed again amended his pleadings, filing his Fourth Amended Petition.[20]

¶7    Reed's Fourth Amended Petition omits his previous allegations related to Rook TX's formation date, whether the Rook defendants were created for an improper purpose, and piercing the corporate veil.[21] It drops all claims against the Rook defendants except for "money had and received" and "expressly disclaims any

---

[15] *Reed I*, 2025 Tex. Bus. 23, ¶ 3, 2025 WL 1713358, at *1.

[16] *Id.* at ¶ 18.

[17] Several other defendants joined the motion.

[18] Third Am. Pet.

[19] *See* Rook Am. Mot. to Dismiss (filed July 11, 2025); Mot. to Dismiss TTLA Claim (filed July 24, 2025). Several other defendants joined these motions as well.

[20] Fourth Am. Pet. Defendant ColossusBets filed its own amended motion to dismiss on August 15. That motion, Rook's July 11 amended motion, and ColossusBets's special appearance remain pending.

[21] *See generally,* Fourth Am. Pet.

allegation, legal theory, or request for relief that requires this Court to interpret, apply, or enforce the governance, internal affairs, or governing documents of any Defendant entity."[22] Reed also filed a "Renewed Motion to Remand," arguing that his amended pleadings divest this Court of jurisdiction.[23] That motion is before the Court now.

## Analysis

¶8     In his renewed request for remand, Reed argues that his Fourth Amended Petition "significantly narrows the claims and removes all allegations that would require adjudication of Defendants' 'governance, governing documents, or internal affairs,'" such that "subject matter jurisdiction under Tex. Gov't Code § 25A.004(b)(2) no longer exists, and remand is now required."[24] In response, the Rook defendants concede that this Court no longer has jurisdiction under Section 25A.004(b)(2),[25] but they argue that the Court has jurisdiction under three other provisions of Section 25A.004: (b)(3), actions asserting a claim under securities or trade-regulation law against certain defendants; (d)(1), actions arising out of qualified transactions; and (f), supplemental jurisdiction.[26] The Court concludes that it

---

[22] *Id.* at ¶¶ 84, 96.

[23] *See* Renewed Mot. to Remand Based on Fourth Am. Pet. (hereafter, Renewed Mot.).

[24] Renewed Mot. at 1.

[25] Resp. to Renewed Mot. to Remand (hereafter, Resp.) at 5.

[26] Resp. at 1–2.

does not have trade-regulation, qualified-transaction, or supplemental jurisdiction over this case.

## A. The Court does not have supplemental jurisdiction under 25A.004(f).

¶9 As the Rook defendants correctly point out, the "general rule" is that "where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction."[27] Relying on this principle, the Rook defendants first argue: "While the Amended Petition removed certain claims as to the Rook Defendants that first triggered original jurisdiction under (b)(2), the Court maintains supplemental jurisdiction over Plaintiff's amended claims under Section 25A.004(f)[.]"[28] This argument fails for (at least) one simple reason: this Court does not have, and has never had, supplemental jurisdiction over any claims in this case.

¶10 The Court denied Reed's original motion to remand, concluding that it had original jurisdiction over the entire action under Section 25A.004(b)(2):

> Reed has pleaded facts and theories of liability that regard Rook's "governance, governing documents or internal affairs" under Section 25A.004(b)(2), and these facts and theories purport to be a basis for Reed's recovery under each of his causes of action and, through his derivative claims, against each defendant. Thus, this dispute does not

---

[27] Resp. at 5 (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996)). While the Rook defendants rely on this proposition to argue supplemental jurisdiction, they do not assert jurisdiction under Section 25A.004(b)(2). The Court thus need not determine whether the general rule observed in *Continental Coffee* should be construed to mean that the Court's jurisdiction under (b)(2) was fixed at the time of removal and could not be destroyed by subsequent filings. *Cf. Royal Canin*, 604 U.S. at 30 ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says.").

[28] Resp. at 5.

7

present the question of whether or when the Court's jurisdiction over one cause of action or party gives it jurisdiction over other causes of action or parties in the case.

... The Court has jurisdiction over this action under Section 25A.004(b)(2).[29]

The Court expressly did not rely on supplemental jurisdiction under Section 25A.004(f).[30]

¶11    In an action in which the Court has original jurisdiction, Section 25A.004(f) grants the Court supplemental jurisdiction over certain claims that form "part of the same case or controversy."[31] However, "[a] claim within the business court's supplemental jurisdiction may proceed in the business court only on the agreement of all parties to the claim and a judge of the division of the court before which the action is pending."[32] Reed never agreed to any of his claims proceeding in this Court; to the contrary, he has consistently maintained that the case should be remanded to the District Court. The Rook defendants argue that Reed had to object to supplemental jurisdiction within 30 days of removal and failed to do so.[33] But Reed moved for remand within 30 days, asserting that the Court lacked jurisdiction

---

[29] *Reed I*, 2025 Tex. Bus. 23, at ¶¶ 24, 26, 2025 WL 1713358, at *7, *8.

[30] *Id.* at ¶ 7, *2 n.13.

[31] TEX. GOV'T CODE § 25A.004(f).

[32] *Id.*

[33] Resp. at 5–6 (citing Bus. Ct. Loc. R. 2).

and seeking remand of the entire case.[34] Although the motion did not separately address supplemental jurisdiction, it sufficiently demonstrated that Reed objected to the Court exercising jurisdiction over the action.

¶12    Thus, none of the claims in this case could proceed in this Court under its supplemental jurisdiction—either before or after Reed's most recent pleading amendments. Because the Court could not have exercised supplemental jurisdiction in this case before Reed amended his pleadings, the Court need not determine whether Reed's amended pleadings could divest the Court of such jurisdiction.[35]

## B.    The Court does not have qualified-transaction jurisdiction under 25A.004(d)(1).

¶13    Reed's Fourth Amended Petition adds a claim for tortious interference with prospective business relations,[36] in which he asserts that the purchase of a Lotto Texas ticket constitutes "a unilateral contract between the player and the Texas Lottery Commission" and "but for Defendants' unlawful conduct, there was

---

[34] Mot. for Remand.

[35] The United States Supreme Court recently addressed an analogous issue in *Royal Canin*. In that case, the federal district court had federal-question and supplemental jurisdiction at the time of removal because the plaintiff's state-law claims were based (in part) on alleged violations of federal law, but the plaintiff amended her pleadings after removal to omit the allegations that implicated federal law. 604 U.S. at 25–26, 28 n.1, 43–44. The Supreme Court held that the federal district court no longer had jurisdiction over the case and had to remand to state court. *Id.* at 39. Relatedly, at least one Texas court of appeals has held that a probate court lost its jurisdiction over ancillary claims once the claims against the estate settled. *Goodman v. Summit at W. Rim, Ltd.*, 952 S.W.2d 930, 933–34 (Tex. App.—Austin 1997, no pet.). The Rook defendants argue that differences in the relevant Texas and federal jurisdictional statues justify a different outcome here than in *Royal Canin*. The Court does not reach that issue.

[36] Fourth Am. Pet. at ¶¶ 103–124.

a reasonable probability that he would have entered into such a contract on May 17, 2023, under the terms of the Original Roll Cycle"—i.e., he would have purchased a ticket for a chance to win an $88 million jackpot instead of a $7.5 million jackpot.[37] The Rook defendants argue that these allegations trigger the Court's jurisdiction over actions arising out of qualified transactions under § 25A.004(d)(1).[38] The Court disagrees.

¶14    A qualified transaction is, among other things, a transaction in which a party "pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million"[39]—at least until September 1, when that amount will lower to $5 million.[40] Quoting *G-Force & Associates, Inc. v. Bloecher*,[41] the Rook defendants argue that these "allegations state the existence of a qualified transaction under Subsection (d)(1) because Plaintiff alleges that he would have been entitled to receive consideration of at least $10 million based on his contractual relationship but for defendants['] wrongful conduct in inducing the Commission to terminate the relationship."[42] Reed replies that *G-Force* does not

---

[37] *Id.* at ¶ 109; *see also id.* at ¶ 120.

[38] Resp. at 9–11.

[39] TEX. GOV'T CODE § 25A.001(14). The statutory definition includes other types of transactions and contains certain exceptions that are not implicated here.

[40] Act of June 1, 2025, 89th Leg., R.S., H.B. 40, §§ 43, 45 (to be codified at TEX. GOV'T CODE §§ 25.001(14), 25A.004(d)).

[41] 2025 Tex. Bus. 18, at ¶25, 715 S.W.3d 778, 787 (8th Div.).

[42] Resp. at 11 (cleaned up).

support qualified-transaction jurisdiction here and, in fact, precludes it.[43] Assuming without deciding that the purchase of a lottery ticket creates a contract,[44] the Court holds that Reed's pleadings do not establish qualified-transaction jurisdiction.

¶15　As an initial matter, the Court agrees with Reed that the Rook defendants' reliance on *G-Force* is misplaced. The plaintiff in *G-Force* alleged a claim for tortious interference with prospective business relations (among other claims) based on construction-project bids that were never accepted.[45] The *G-Force* Court held that the bids were not qualified transactions because they were merely "contemplated transactions, contingent and speculative in nature and characterized by the ever present possibility that they will never be effectuated notwithstanding Defendants' contention to the contrary," such that neither party had yet agreed to pay or receive consideration with an aggregate value of at least $10 million.[46] The *G-Force* Court rejected the defendants' argument that the definition of a qualified transaction is "broad enough to encompass such a potential transaction."[47]

---

[43] Reply in Support of Renewed Mot. at 3–5.

[44] *See Stewart v. Texas Lottery Comm'n*, 975 S.W.2d 732, 735 (Tex. App.—Corpus Christi-Edinburg 1998, no pet.) (assuming purchase of lottery ticket created contract with Lottery Commission but holding sovereign immunity barred breach-of-contract claim against Commission).

[45] *G-Force*, 2025 Tex. Bus. 18, at ¶¶ 5, 18–20, 715 S.W.3d at 781, 785–86.

[46] *Id.* at ¶ 20, 786.

[47] *Id.* at ¶ 21, 786.

¶16    Reed alleges a hypothetical circumstance in which he could have pur-

chased a lottery ticket under different terms than he did, in which case he asserts

that he would have won more than $10 million. This potential transaction is even

more speculative than in *G-Force*, where there was an offer but not acceptance. Here,

there was neither an offer nor acceptance. Not only did Reed not purchase a ticket

for a chance to win $10+ million in May 2023, the State did not offer such a ticket

for sale in May 2023. And the State might never have done so, even in the absence

of any action by the defendants. There were ten drawings between the April 2023

drawing defendants allegedly "rigged" and the May 2023 drawing Reed won. Even

if the defendants had not claimed the April 2023 prize, the money would have stayed

in the pot for the next eleven drawings only if no one won any of the interim draw-

ings, despite any increased ticket sales due to the much larger jackpot.[48]

¶17    Regardless of whether the alleged potential contract passes muster un-

der *G-Force*, it does not constitute a qualified transaction. "The aggregate value of

the consideration used to support a qualified transaction is determined at the time

of contracting."[49] Later events that increase or decrease the transaction's ultimate

---

[48] Reed previously admitted that larger jackpots increase demand for lottery tickets. *See* Third Am. Pet. at ¶ 33.

[49] *Slant Operating, LLC v. Octane Energy Operating, LLC*, 2025 Tex. Bus. 22, ¶ 31, 2025 WL 1483466, at *7 (8th Div.); *see also Atlas IDF, LP v. NexPoint Real Est. Partners, LLC*, 2025 Tex. Bus. 16, ¶¶ 31–33, 715 S.W.3d 390, 395–96 (1st Div.) (observing that parties agreed "that a po-tential qualified transaction's aggregate value is measured at the time of transaction" and agreeing

value do not retroactively change the relevant consideration value.[50] Even if Reed had purchased a lottery ticket for a chance to win an $88 million lottery jackpot in May 2023, the consideration for that purchase would not have been $88 million. At the time of the hypothetical purchase, it would have been unknown whether the ticket would later be a winning ticket. The consideration for the transaction looks to the value of the ticket at time of the purchase, when Reed paid only $1 for the ticket. The fact that the hypothetical ticket could have later obtained a much larger value does not increase the value of the consideration at the time of the transaction.[51]

¶18    The Court therefore does not have jurisdiction over this action under Section 25A.004(d)(1).

## C.    This case also does not implicate the Court's trade-regulation jurisdiction.

¶19    Reed alleges that other defendants in the case violated provisions of the Texas Lottery Act (Chapter 466 of the Government Code) and asserts negligence

---

that "§ 25A.001(14)'s 'qualified transaction' definition looks at when the transaction happened" (citing *Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 376 (N.D. Tex. 2020)).

[50] *See Slant Operating*, 2025 Tex. Bus. 22, at ¶ 26, 2025 WL 1483466, at *6 ("While future fortuitous events could impact the value ultimately derived from that consideration (i.e., revenue), the relevant inquiry here is the value of the consideration at the time of contracting."); *Atlas*, 2025 Tex. Bus. 16, at ¶ 32, 715 S.W.3d at 395 ("[C]onsideration focuses on the bargain—not the outcome or actual performance."); *see also id.* at ¶ 37, 396 (declining to consider evidence of present-day value of certain notes because it was not relevant to "the value placed on the notes by the parties … nine years earlier," at time of transaction).

[51] *See Slant Operating*, 2025 Tex. Bus. 22, at ¶ 26, 2025 WL 1483466, at *6; *Atlas*, 2025 Tex. Bus. 16, at ¶ 32, 715 S.W.3d at 395; *see also, e.g.*, *Goosehead*, 533 F. Supp. 3d at 376.

*per se* claims against them on that basis.[52] The Rook defendants argue, for the first time,[53] that the Texas Lottery Act is "trade regulation law" and this Court thus has jurisdiction over this case under Section 25A.004(b)(3)(A), which grants the Court jurisdiction over actions "in which a claim under a state or federal securities or trade regulation law is asserted against … an organization."[54] In reply, Reed argues that the Texas Lottery Act is not a "trade regulation law."

---

[52] Fourth Am. Pet. at ¶¶ 67, 74, 77, 98.

[53] Although these allegations are not new to the case, the Rook defendants did not assert jurisdiction under Section 25A.004(b)(3) in the notice of removal, nor did any party rely on it to assert jurisdiction at the time of removal and the plaintiff's motion to remand.

[54] TEX. GOV'T CODE § 25A.004(b)(3)(A). Notably, when including and excluding certain types of claims from this Court's jurisdiction, the statute often uses differing prepositional language. *Compare id.* § 25A.004(b)(3) ("a claim *under* a state or federal securities or trade regulation law")*, with id.* § 25A.004(b)(2) ("an action *regarding* the governance, governing documents, or internal affairs of an organization"); *id.* § 25A.004(b)(7) ("an action *arising out of* the Business Organizations Code"); *id.* § 25A.004(d)(1) ("an action *arising out of* a qualified transaction"); *id.* § 25A.004(d)(2) ("an action that *arises out of* a contract or commercial transaction"); *id.* § 25A.004(d)(3) ("an action that *arises out of* a violation of the Finance Code or Business & Commerce Code"); *id.* § 25A.004(e) ("an action seeking … a declaratory judgment *under* Chapter 37, Civil Practice and Remedies Code"); *id.* § 25A.004(g)(2) ("a claim *arising out of*" the Estates, Family, or Insurance Codes or certain provisions of the Business & Commerce or Property Codes); *id.* § 25A.004(g)(3) ("a claim *arising out of* the production or sale of a farm product"); *id.* § 25A.004(g)(4) ("a claim *related to* a consumer transaction"); *id.* § 25A.004(g)(5) ("a claim *related to* the duties and obligations under an insurance policy"); *id.* § 25A.004(h)(1) ("a claim *arising under* Chapter 74, Civil Practice and Remedies Code"). These different words may have different meanings that affect the reach of the provision. *Compare Reed I*, 2025 Tex. Bus. 23, ¶ 10, 2025 WL 1713358, at *3 (observing that ordinary meaning of "regarding," used in Section 25A.004(b)(2), is "expansive" (quoting *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 254 (Tex. 2023)), *with C Ten*, 2025 Tex. Bus. 1, ¶ 16, 708 S.W.3d at 232 (interpreting preposition "under" in Section 15A.004(e) less expansively); *see also Chaudhry v. Stillwater Cap. Invs., LLC*, 2025 Tex. Bus. 31, ¶¶ 70–71, 2025 WL 2322370, at *8 (1st Div.) (interpreting "regarding" in Section 25A.004(b)(2)); *Atlas*, 2025 Tex. Bus. 16, at ¶ 29, 715 S.W.3d at 395 (interpreting "arising out of" in Section 25A.004(d)(1)).

¶20    The Court concludes that it does not have jurisdiction under Section 25A.004(b)(3) regardless of whether the Texas Lottery Act is a "trade regulation law." Reed does not seek a remedy under the Act. Instead, he asserts negligence *per se* claims and supports those claims with allegations that certain defendants violated two provisions of the Act:

- Section 466.307, which makes it a criminal offense for a person to "intentionally or knowingly influence[] or attempt[] to influence the selection of the winner of a lottery game";[55] and

- Section 466.3054, which makes it a criminal offense to establish or promote arrangements to purchase lottery tickets on behalf of a group and divide any winnings, if the person does so for profit and knowingly or intentionally uses part of the funds for a purpose other than purchasing the tickets or retains a share of any winnings as compensation.[56]

Assuming without deciding that these criminal statutes are trade-regulation laws, the Court holds that, if Texas were to recognize a negligence *per se* claim based on violations of these statutes, such claims would arise under general tort law and would not be "claim[s] under a state … trade regulation law" for purposes of Section 25A.004(b)(3).[57]

¶21    Negligence *per se* is a category of negligence where a statute establishes the standard of care, such that whether the defendant breached the duty owed is

---

[55] TEX. GOV'T CODE § 466.307(a).

[56] *Id.* § 466.3054(a).

[57] *Id.* § 25A.004(b)(3)(A).

15

measured by whether the defendant complied with the statute.[58] But a violation of a statute is not automatically negligence *per se*.[59] Instead, courts must determine whether the particular statute should be adopted as a basis for tort liability, whether the plaintiff is in the class of persons the statute is designed to protect, and whether the plaintiff's injury is the type of injury the statute is designed to prevent.[60] The "overwhelming majority" of negligence *per se* cases involve violations of traffic statutes, where the operators of vehicles already owe a tort duty not to operate their vehicles negligently.[61] Imposing a new tort duty—as Reed seeks to do here—is "a rare, but not unheard-of, phenomenon" in Texas.[62] Doing so "bring[s] into existence

---

[58] *See City of Houston v. Manning*, 714 S.W.3d 592, 595–96 (Tex. 2025) (per curiam); *Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex. 2001); *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982).

[59] *Perry v. S.N.*, 973 S.W.2d 301, 304–05 & n.4 (Tex. 1998); *Rudes v. Gottschalk*, 324 S.W.2d 201, 204–05 (1959).

[60] *Perry*, 973 S.W.2d at 304–05; *see also* RESTATEMENT (SECOND) OF TORTS §§ 286, 288 (1965).

[61] *Perry*, 973 S.W.2d at 306 (listing cases); *see also Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979) ("The easiest type of negligence per se case is that one involving a traffic regulation."). Another common context is building code violations, where property owner already owe certain tort duties to occupants. *See, e.g.*, *Osti v. Saylors*, 991 S.W.2d 322, 326–28 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

[62] *Martinez v. Walgreen Co.*, 935 F.3d 396, 403 (5th Cir. 2019); *see also Brown v. De La Cruz*, 156 S.W.3d 560, 565 (Tex. 2004) (explaining that penal statutes are strictly constructed and a private cause of action is not implied without some indication of legislative intent); *Perry*, 973 S.W.2d at 307 (observing that Texas Supreme Court "has created a new duty by applying negligence per se on only one occasion").

a new type of tort liability"[63] and "can have an extreme effect upon the common law of negligence."[64]

¶22 In deciding whether a statute should give rise to a new tort duty, the Texas Supreme Court has identified the following nonexclusive considerations (the *Perry* factors):

(1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common-law duty;

(2) whether the statute puts the public on notice by clearly defining the required or prohibited conduct;

(3) whether the statute would impose liability without fault;

(4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of wrongdoers; and

(5) whether the plaintiff's injury is a direct or indirect result of the alleged violation of the statute.[65]

The purpose of these factors is to determine whether the conduct prohibited by the statute is a suitable basis for imposing tort liability under the common law.[66]

---

[63] *Perry*, 973 S.W.2d at 306 (quoting *Burnette v. Wahl*, 588 P.2d 1105, 1109 (Or. 1978)).

[64] *Id.* (quoting David P. Leonard, *The Application of Criminal Legislation to Negligence Cases: A Reexamination*, 23 SANTA CLARA L. REV. 427, 449 n.2 (1983)).

[65] *Perry*, 973 S.W.2d at 309; *see also Reeder*, 61 S.W.3d at 366–67 (Phillips, C.J., joined by Hankinson and O'Neill, JJ., concurring); *Cerda v. RJL Ent., Inc.*, 443 S.W.3d 221, 227 (Tex. App.—Corpus Christi-Edinburg 2013, pet. denied); *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 162–63 (Tex. App.—Eastland 2010, pet. denied); *Osti*, 991 S.W.2d at 328; *Ordonez v. M.W. McCurdy & Co.*, 984 S.W.2d 264, 268 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

[66] *See Perry*, 973 S.W.2d at 309; *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997).

¶23    The question of whether to recognize tort liability for conduct that violates Sections 466.3054 or 466.307 is not before the Court. But if a court did so, the resulting cause of action would be a negligence claim,[67] not a claim under the Sections 466.3054 or 466.307, which impose criminal liability rather than tort liability.[68] The Court thus holds that Reed's negligence *per se* claims based on alleged violations of the Texas Lottery Act do not give rise to trade-regulation jurisdiction under Section 25A.004(b)(3).

¶24    Although the briefing focuses on the Texas Lottery Act, Reed also asserts negligence *per se* based on alleged violations of Section 401.304 of the Administrative Code, which sets forth the "Draw Game Rules," including detailed rules governing use of the retail terminals, QR codes, and sale locations.[69] The same reasoning applies: assuming without deciding that these rules are trade-regulation laws, the Court holds that, if Texas were to recognize a negligence claim adopting

---

[67] *Perry*, 973 S.W.2d at 306 (observing that recognizing negligence *per se* claim where negligence duty did not already exist creates new tort liability under common law); *see also, e.g.*, *Manning*, 714 S.W.3d at 596 (holding that negligence *per se* claims fall under Tort Claims Act's waiver of immunity for negligence claims); *Tenaris Bay City Inc. v. Ellisor*, — S.W.3d —, 2025 WL 1478487, at *4 (Tex. May 23, 2025) (observing that negligence *per se* is "a species of negligence, in which the breach of duty element is established by showing the violation of a statute or regulation"); *Carter*, 584 S.W.2d 278 ("Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person.").

[68] *See Powell v. City of Baird*, 128 S.W.2d 786, 789–90 (Tex. 1939) (holding that a poll tax is levied "under the laws of the State of Texas" if a Texas law "directly authorizes such levy" and construing term "under" to mean "by authority of"); *C Ten*, 2025 Tex. Bus. 1, ¶ 16, 708 S.W.3d at 232 (relying on *Powell* and other case law and dictionary definitions to interpret preposition "under" in Section 15A.004(e)).

[69] TEX. ADMIN. CODE § 401.304.

these rules as a basis for tort liability, it would create a negligence claim, not a "claim under a state … trade regulation law" for purposes of this Court's jurisdiction.[70] It therefore does not give rise to jurisdiction under Section 25A.004(b)(3).

## Conclusion

¶25    The Court **HOLDS** that it lacks jurisdiction over this action, **GRANTS** Reed's renewed motion to remand, and **REMANDS** the action to the 353rd District Court.[71]

Date signed: August 25, 2025

_____
Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division

---

[70] TEX. GOV'T CODE § 25A.004(b)(3)(A).

[71] Defendants have two Rule 91a motions pending (filed July 11 and August 15), as well as ColossusBets's special appearance (filed July 14). This Court cannot resolve those disputes because it lacks subject-matter jurisdiction over the case.