2026 Tex. Bus. 32



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| CLEAN-CO SYSTEMS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 26-BC11B-0003 |
| | § | |
| ENTERPRISE PRODUCTS | § | |
| OPERATING, LLC, | § | |
| | § | |
| *Defendant.* | § | |

---

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND**

---

¶1 Before the Court is an Opposed Motion to Remand ("Motion") filed by Plaintiff Clean-Co Systems, Inc. ("Clean-Co" or "Plaintiff"), challenging the Texas Business Court's jurisdiction over the removal of this case from the district court by Defendant Enterprise Products Operating, LLC ("Enterprise" or "Defendant").

¶2 Plaintiff contends this case does not fall within the Texas Business Court's qualified transaction jurisdiction because it concerns a single unpaid invoice, for chemical cleaning services that Clean-Co performed for Enterprise in July-August 2025 pursuant to a time and materials purchase order ("the Purchase Order"), in an original amount not to

exceed $154,360.[1] That is substantially less than the over $5 million threshold needed to support qualified transaction jurisdiction under TEX. GOV'T CODE §25A.004(d)(1). Clean-Co also attaches evidence to support its contention that the invoiced work – like all such work it has performed under the MSA for the Enterprise family of companies – arises out of unrelated "spot contracts" no one of which ever exceeded $5 million and that have, over the past five years, totaled less than $400,000. *Plaintiff's Opposed Motion to Remand ("Plaintiff's Motion") at Ex. 1, ¶¶4-6 (Declaration of James Rooney).*

¶3     Enterprise counters that the Purchase Order is, in fact, a qualified transaction because it is either a single, integrated transaction or the latest in a "series of related transactions . . . under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $5 million," citing TEX. GOV'T CODE §25A.001(14). The Purchase Order was issued under a 2003 Master Service Agreement ("MSA") between Clean-Co and a related Enterprise entity, pursuant to which Enterprise claims to have paid Clean-Co over $7.8 million to date. That, Enterprise says, satisfies the definition of a qualified transaction. The amount in controversy exceeding $5 million also required by TEX. GOV'T CODE §25A.004(d)(1), it argues, is supplied by its counterclaim for breach of the MSA – which seeks roughly $8 million in damages for costs it incurred to repair damage to its boiler allegedly caused by Clean-Co's unworkmanlike

---

[1] Because the scope of work changed after the Purchase Order's issuance, the amount Clean-Co now seeks to recover from Enterprise for the unpaid invoice is $688,141.87.

performance. *See Defendant's Response in Opposition to Plaintiff's Motion to Remand ("Defendant's Response") at 5-6.*[2]

¶4    It is not disputed that, at the time the MSA was executed, Enterprise neither paid nor made any promise to pay Clean-Co; and Clean-Co neither received nor was entitled to receive any consideration. Clean-Co summarizes it well: "This was nothing more than an umbrella agreement governing general legal rights and obligations of the parties if they do business together in the future. The Service Agreement makes no reference to any specific project or transaction. Nothing in that agreement obligated either party to any monetary consideration." *Plaintiff's Motion at 3* (footnotes omitted). The MSA, therefore, cannot standing alone constitute the qualified transaction that supports business court jurisdiction.[3]

¶5    Rather, Enterprise contends that qualified transaction jurisdiction "springs"[4] into existence upon the execution, pursuant to the MSA, of the first purchase order or

---

[2] Clean-Co does not challenge Enterprise's claimed amount in controversy, but asserts that the counterclaim arises under the Court's supplemental jurisdiction, to which it does not consent. *See* TEX. GOV'T CODE §25A.004(f) ("A claim within the business court's supplemental jurisdiction may proceed in the business court only on the agreement of all parties to the claim and a judge of the division of the court before which the action is pending."). Clean-Co accordingly urges in the alternative that, even if the Court has and retains jurisdiction over Enterprise's counterclaim, it should remand the breach of contract cause of action seeking recovery for its unpaid invoice on that basis. *See Plaintiff's Motion at 11-12.* Because of the Court's disposition herein, it does not reach this issue.

[3] *See Reed v. Rook TX, LP,* 2025 Tex. Bus. 34, ¶17, 721 S.W.3d 25, 33-34 (3d Div.) ("The aggregate value of the consideration used to support a qualified transaction is determined at the time of contracting. Later events that increase or decrease the transaction's ultimate value do not retroactively change the relevant consideration value.") (*quoting Slant Operating, LLC v. Octane Energy Operating, LLC*, 2025 Tex. Bus. 22, ¶31, 717 S.W.3d 409, 420 (8th Div.) (footnote and internal quotation marks omitted).

[4] The analogy here is to a "springing interest" (or "springing executory interest") in property. *See, e.g.,* https://www.law.cornell.edu/wex/springing_interest ("Springing interest is an interest in property where the person owns the property after something occurs or at a specified time.") (last visited May 11, 2026).

invoice resulting in the payment of over $5 million to Clean-Co, cumulatively. Under this view, any action or litigation that arises out of that or any subsequent, related invoice may proceed in the Business Court (assuming that the amount in controversy exceeds $5 million).

¶6    In support, Enterprise cites its removal notice, which alleges "a series of related transactions in which Enterprise paid Clean-Co in excess of $5 million." *Notice of Removal to Business Court at 4 (quoting Defendant's Original Answer and Counterclaims* at ¶12). Enterprise also offers the affidavit of Renee Gold, in which she identifies an internal Oracle payment platform that purportedly evidences over $7.88 million "paid by Enterprise for the related transactions to Clean-Co" since 2003. *Defendant's Response at Ex. 2, ¶2.*

¶7    Clean-Co objects to the Gold affidavit on the ground that it fails to establish that the Oracle platform (and the underlying invoices identified in paragraph 4 thereof) are non-hearsay business records. The Court agrees, and hereby sustains Clean-Co's hearsay objections.[5] That removes from this record the only evidence purporting to show (1) that the parties transacted over $5 million worth of services under the MSA, and (2) that those services were "related" (save and except for Enterprise's undisputed assertions that the invoices are all related because they involve more or less the same parties[6] and the same general "type of specialized industrial-cleaning work." *Defendant's Response at 5).*

---

[5] This includes Ms. Gold's conclusory assertion that the multiple invoices are "related."

[6] The Enterprise entity that signed the 2003 MSA is a different entity than the Defendant – which purportedly issued the Purchase Order. And it appears from some of the invoices attached to Enterprise's Response that a third Enterprise entity may have tasked Clean-Co to perform work pursuant to the MSA. *See Defendant's Response at R. Gold Affidavit Ex. D.*

¶8    That ruling does not decide the matter, however. Evidentiary considerations are inconclusive here, given the preliminary procedural posture and the accompanying standard of review – under which a mere recitation that the jurisdictional requirements have been met will ordinarily control, unless "(a) a party presents evidence that the amount pleaded is falsely asserted to wrongly obtain or avoid jurisdiction, or (b) a different amount in controversy is readily established, such as by statutorily set fees." *C Ten 31, LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶¶49-50, 708 S.W.3d 229, 243 (3d Div.). For Enterprise's pleading squarely recites the existence of a series of related transactions and an amount in controversy exceeding $5 million. *See Notice of Removal to Business Court at 2-5.*[7]

¶9    But even construing the pleadings liberally in favor of jurisdiction, as we must,[8] what appears on this record is a series of transactions for a "type of specialized industrial-cleaning work" that took place over a 20-plus period of years between Enterprise (or its affiliates) and Clean-Co. Some are geographically proximate (Mont Belvieu, Texas); some appear not to be (*e.g.,* Midland, Texas). Are these "related" within the meaning of Section 25A.001(14)'s sense of "a series of related transactions"? Clean-Co says no: "There is only one purchase order at issue in this case, and the invoices issued under that Purchase Order amount to less than one million dollars." *Plaintiff's Motion at 8.* To constitute a series of related transactions as required by the statute, it says, the series at

---

[7] *See C Ten 31,* 2025 Tex. Bus. 1, at ¶34 *(*"while the term 'pleading' often refers only to petitions and answers, the jurisdictional allegations in Defendants' notice of removal are part of the 'pleadings' for these purposes.").

[8] *Id.* at ¶35.

5

issue "must be related to the transaction or transactions that give rise to this action, not to historical, unrelated projects over which there is absolutely no dispute." *Id. at 10.*

¶10    Enterprise disagrees, citing cases that broadly construe the statutory term "related"[9] and that note its expansive reach. *See Defendant's Response at 10-11.* But while expansive, that reach is not unlimited. *See, e.g., Cal. Div. of Lab. Standards Enf't v. Dillingham Constr.,* 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."). And, ultimately, the duty lies with this court to determine the contours of its jurisdiction – including, as in this instance, when a series of transactions are sufficiently "related" as to constitute a "qualified transaction" within the meaning of TEX. GOV'T CODE §25A.001(14). *See, e.g., Shell W. E&P, Inc. v. Pel-State Bulk Plant, LLC,* 509 S.W.3d 581, 587 (Tex. App.— San Antonio 2016, no pet.) ("Courts determine as a matter of law whether multiple documents comprise a single written contract when they relate to the same transaction.").

¶11    As noted above, the historical purchase orders on which Enterprise relies span more than two decades, involve differing scopes of work, and were performed at diverse facilities – potentially operated by different affiliated entities. Only one such purchase order – the most recent one in the alleged series – is at issue in this case. Only that Purchase Order supplies the basis for any claim or counterclaim; the remainder are not in controversy. Enterprise does not contend that Clean-Co performed the historical purchase

---

[9] Among others, *In re City of Galveston*, 622 S.W.3d 851, 858 & n.28 (Tex. 2021) *(citing ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017)).

orders deficiently, nor does Clean-Co seek recovery under them. They are, in short, historical background: evidence of a long-standing business relationship between the parties, but nothing more than that with respect to the subject matter of this suit. Accordingly, the Court holds that it lacks jurisdiction over the case under Government Code Section 25A.004(d)(1) because the MSA and the invoice at issue, taken together, do not constitute "a transaction, or series of related transactions" that exceeds $5 million in consideration.

¶12    For the foregoing reasons, Plaintiff's Motion to Remand is hereby GRANTED.

DATED: May 20, 2026

HON. GRANT DORFMAN
TEXAS BUSINESS COURT
ELEVENTH DIVISION